CONNIE M. PACHECO, Plaintiff v. ROGERS AND BREECE, INC., Defendant

No. COA02-231

(Filed 6 May 2003)

**1. Emotional Distress— negligent infliction—exhumation of remains**

The trial court correctly granted summary judgment for defendant funeral home on plaintiff's claim for negligent infliction of emotional distress arising from the exhumation and transfer of her deceased husband's remains to Puerto Rico. Plaintiff failed to present sufficient evidence of severe emotional distress.

**2. Fiduciary Relationship— exhumation and transfer of remains—no contact with plaintiff**

The trial court did not err by granting summary judgment for defendant funeral home on plaintiff's claim for breach of fidu-

ciary duty rising from the exhumation and transfer of her husband's remains to Puerto Rico. There was no fiduciary relationship between the parties at the time of the acts giving rise to the suit because plaintiff had not had any direct contact with defendant for at least seven years, and defendant had fully performed its part of the original contract.

Appeal by plaintiff from order entered 6 November 2001 by Judge James Floyd Ammons, Jr. in Cumberland County Superior Court. Heard in the Court of Appeals 22 January 2003.

*Kelly & West, by J. David Lewis, for plaintiff appellant.*

*Pinto Coates Kyre & Brown, P.L.L.C., by Paul D. Coates and John I. Malone, Jr., for defendant appellee.*

*H. Dolph Berry, for defendant appellee.*

LEVINSON, Judge.

Plaintiff (Connie M. Pacheco) appeals from an order granting summary judgment in favor of defendant (Rogers and Breece, Inc.). For the reasons stated herein, we affirm the trial court.

This case arises from the 1998 exhumation of the body of Jose M. Pacheco from his grave at Hair Chapel Cemetery, in the Linden community of Cumberland County. The evidence before the trial court at the time it granted defendant's motion for summary judgment showed the following: Plaintiff and Mr. Pacheco, a member of the United States Army Special Forces, were married in 1986. When Mr. Pacheco suffered fatal injuries in a 1990 automobile accident, plaintiff contracted with defendant to provide funeral services, and purchased a joint headstone and burial plot at Hair Chapel Cemetery in Linden, North Carolina. After the burial contract was fulfilled, plaintiff and defendant had no further contact. Shortly after the funeral, plaintiff was contacted by the U.S. Army to retrieve the deceased's personal belongings, but she did not respond. In 1997 or 1998, defendant was contacted by Sergeant Maximinos Ramos of the United States Army. Ramos spoke with Mr. Robert Wilson Breece, Jr., vice president of defendant funeral home, and explained that he represented Jose Pacheco's family. Ramos informed Breece that Mr. Pacheco's mother, Antonia Pacheco, desired to have Mr. Pacheco's body disinterred and reburied in Puerto Rico, because Mr. Pacheco and Antonia were of Puerto Rican descent. Ramos also told Breece that he had attempted

unsuccessfully to contact plaintiff regarding the requested disinterment. Breece informed Ramos that before he would exhume Mr. Pacheco's body, Ramos would have to "contact all the family and have permission from them, and have a signed disinterment order, or a court order and everything signed by a judge."

Antonia Pacheco petitioned for and obtained from the Cumberland County Superior Court an order of exhumation on 3 February 1998. The trial court's Order of Exhumation stated in pertinent part that:

> . . . it appearing that this action is for an Order of Exhumation of the remains of [Mr. Pacheco] to move same from Linden, Cumberland County, North Carolina to Yauco, Puerto Rico; and it further appears that there is no opposition from the next-of-kin.

> IT IS, THEREFORE, ORDERED, ADJUDGED & DECREED: 1. That the Order of Exhumation of the remains of [Mr. Pacheco] is hereby granted for the specific purpose of moving the remains to a grave in Yauco, Puerto Rico.

Upon receiving the Order, defendant exhumed decedent's remains on 1 July 1998, and arranged for their transportation to Puerto Rico. Defendant did not attempt to contact plaintiff before the disinterment. In September 1998, plaintiff learned that Mr. Pacheco's body had been exhumed and removed from Cumberland County.

On 5 February 2001, plaintiff filed a complaint in Cumberland County Superior Court against defendant, seeking damages for negligent infliction of emotional distress and breach of fiduciary duty. Defendant moved for summary judgment in October 2001, and on 6 November 2001, the trial court granted summary judgment in favor of defendant. From this order plaintiff appeals.

## Standard of Review

Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C.G.S. § 1A-1, Rule 56(c) (2001); *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000), *affirmed per curiam*, 353 N.C. 445, 545 S.E.2d 210 (2001). "[T]he party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact." *Pembee Mfg. Corp. v. Cape Fear*

*Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985) (citation omitted). However, "[o]nce the party seeking summary judgment makes the required showing, the burden shifts to the nonmoving party to produce a forecast of evidence demonstrating specific facts, as opposed to allegations, showing that he can at least establish a *prima facie* case at trial." *Gaunt v. Pittaway*, 139 N.C. App. 778, 784-85, 534 S.E.2d 660, 664, *disc. review denied and appeal dismissed*, 353 N.C. 262, 546 S.E.2d 401 (2000), *cert. denied*, 534 U.S. 950, 151 L. Ed. 2d 261 (2001). Thus, "[a]s a general rule, upon a motion for summary judgment, supported by affidavits, 'an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.' " *Spinks v. Taylor and Richardson v. Taylor Co.*, 303 N.C. 256, 263-64, 278 S.E.2d 501, 505 (1981) (affirming entry of summary judgment against plaintiff who "failed to submit affidavits showing a genuine issue of material fact and elected to rest upon her unverified complaint", but reversing summary judgment entered against party who filed a verified complaint) (quoting N.C.G.S. § 1A-1, Rule 56(e)). "To hold otherwise . . . would be to allow plaintiffs to rest on their pleadings, effectively neutralizing the useful and efficient procedural tool of summary judgment." *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 64, 414 S.E.2d 339, 342 (1992). In this regard, a verified complaint "may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein." *Page v. Sloan*, 281 N.C. 697, 705, 190 S.E.2d 189, 194 (1972).

In addition, "the evidence presented by the parties must be viewed in the light most favorable to the non-movant." *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). On appeal, this Court's standard of review involves a two-step determination of whether (1) the relevant evidence establishes the absence of a genuine issue as to any material fact, and whether (2) either party is entitled to judgment as a matter of law. *Von Viczay*, 140 N.C. App. at 738, 538 S.E.2d at 630.

I.

[1] We first consider the trial court's dismissal of plaintiff's claim for negligent infliction of emotional distress (NIED). The parties have directed most of their arguments to the issue of what standard of

care, if any, is required of a funeral home, and whether, assuming a duty of care existed, defendants negligently breached such duty. However, we find it unnecessary to resolve these issues, as an alternative ground sustains the trial court's grant of summary judgment. *See Nifong v. C. C. Mangum, Inc.*, 121 N.C. App. 767, 768, 468 S.E.2d 463, 465 ("[i]f the trial court grants summary judgment, the decision should be affirmed on appeal if there is any ground to support the decision"), *affirmed*, 344 N.C. 730, 477 S.E.2d 150 (1996). We turn, therefore, to consideration of the elements of a NIED claim. In *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 395 S.E.2d 85 (1990), the North Carolina Supreme Court held:

> [T]o state a claim for negligent infliction of emotional distress, a plaintiff must allege that (1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . ., and (3) the conduct did in fact cause the plaintiff severe emotional distress. . . . In this context, the term 'severe emotional distress' means any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so.

*Id.* at 304, 395 S.E.2d at 97. Thus, a plaintiff does not have a remedy for garden variety anxiety or concern, but only for *severe* distress. *Id.* The North Carolina Supreme Court has discussed the legal meaning of the term "severe emotional distress":

> [A claim for emotional distress] applies only where the emotional distress has in fact resulted, and where it is severe. Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like. . . . It is only where it is extreme that the liability arises. . . . The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it. The intensity and the duration of the distress are factors to be considered in determining its severity. . . . It is for the court to determine whether on the evidence severe emotional distress can be found[.]

*Waddle v. Sparks*, 331 N.C. 73, 84-85, 414 S.E.2d 22, 27-28 (1992) (quoting Restatement (Second) of Torts § 46 cmt.j (1965)) (claim dismissed where "[t]here is no forecast of any medical documentation of

plaintiff's alleged 'severe emotional distress' nor any other forecast of evidence of 'severe and disabling' psychological problems within the meaning of the test laid down in *Johnson v. Ruark*").

Proof of "severe emotional distress" does not necessarily require medical evidence or testimony. *Coffman v. Roberson*, 153 N.C. App. 618, 628, 571 S.E.2d 255, 261 (evidence sufficient where "[plaintiff], her friends, her family, and her pastor testified to the severe emotional distress she suffered and continues to suffer"), *disc. review denied*, 356 N.C. 668, 577 S.E.2d 111 (2003). However, appellate decisions have consistently upheld dismissal of NIED and similar claims where a plaintiff fails to produce any real evidence of severe emotional distress. *See, e.g., Estate of Hendrickson v. Genesis Health Venture, Inc.*, 151 N.C. App. 139, 157, 565 S.E.2d 254, 265 (reversing trial court's denial of directed verdict motion where "there was evidence that plaintiffs were emotionally distressed . . . [but] plaintiffs failed to present evidence, even viewed in the light most favorable to them, that such distress was severe"), *disc. review denied*, 356 N.C. 299, 570 S.E.2d 503 (2002); *Fox-Kirk v. Hannon*, 142 N.C. App. 267, 281, 542 S.E.2d 346, 356 (summary judgment proper where "two years after the accident . . . [plaintiff] had not sought any medical treatment or received any diagnosis for any condition that could support a claim for severe emotional distress as that term is defined by law"), *disc. review denied*, 353 N.C. 725, 551 S.E.2d 437 (2001); *Johnson v. Scott*, 137 N.C. App. 534, 539, 528 S.E.2d 402, 405 (2000) (summary judgment proper where plaintiff's evidence of "difficulty sleeping," nightmares and periodic loss of appetite following her father's death failed to "me[e]t the requisite level of 'severe' emotional distress").

In the instant case, defendant asserts, *inter alia*, that plaintiff failed to demonstrate that she suffered severe emotional distress. We agree. Plaintiff's unverified complaint included a bare assertion that she suffered severe emotional distress as a result of defendant's negligence. Further, in response to defendant's summary judgment motion, plaintiff failed to submit *any* evidence in support of her unverified allegation of severe emotional distress. Plaintiff did not file any affidavits, take depositions, submit any medical documentation, or verify her complaint. Instead, plaintiff simply asserts in her brief that defendant "knew that its actions had been greatly upsetting emotionally to Plaintiff." The record does not support this statement. Plaintiff references a statement from Breece's deposition, "I know the wife is concerned, but she has a balance on the—but she has a balance on the funeral bill." Preliminarily, defendant's awareness

that plaintiff was "very concerned" does not indicate that plaintiff suffered "severe emotional distress." Further, this statement was a written notation associated with an insufficient funds check plaintiff had submitted in payment for Mr. Pacheco's funeral, which had occurred more than five years before the exhumation, and which had no connection to plaintiff's claim for NIED. Plaintiff also points to another statement in Breece's deposition, wherein he relates that plaintiff's mother had come to the funeral home and told him that "it was very upsetting and everything to the family. And I guess she was referring to her daughter, Connie Pacheco." This statement from plaintiff's mother regarding "the family," which stated only that the situation was "very upsetting," completely fails to establish that plaintiff suffered "severe emotional distress" as the term is defined with regard to a claim for NIED.

Plaintiff also attempts to avoid her complete failure of proof on this issue by contending that she is not required to produce any evidence of emotional distress, because "some issues are simply too obvious to dispute, and are inferred by the court as a matter of law." Even assuming, *arguendo*, that some issues are "too obvious to dispute," the legal presence of severe emotional distress is not among these. *Waddle v. Sparks*, 331 N.C. at 84, 414 S.E.2d at 28 ("[i]t is for the court to determine whether on the evidence severe emotional distress can be found"). In support of her position, plaintiff relies solely on a 1914 case noting that "[t]here *was evidence of mental suffering*, but it would have been inferred as a matter of law upon the circumstances of this case." *Byers v. Express Co.*, 165 N.C. 542, 545, 81 S.E. 741, 742 (1914), *rev'd on other grounds*, 240 U.S. 612, 60 L. Ed. 825 (1916) (emphasis added). We do not find *Byers* persuasive authority in this case. First, the opinion clearly holds that there "was evidence of mental suffering," and thus the remainder of the sentence is, arguably, *dicta*. Second, *Byers* is a 1914 case, and plaintiff's position has since been rejected by the North Carolina Supreme Court in *Holloway v. Wachovia Bank and Trust Co.*, N.A., 339 N.C. 338, 356, 452 S.E.2d 233, 243-44 (1994):

[P]laintiffs assert, 'Proof that the defendant behaved outrageously vis-a-vis plaintiff may be self-evident to support a finding that plaintiff suffered severe emotional distress.' In support plaintiffs cite from the Restatement of Torts, 'Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is itself important evidence that the distress has existed.'. . . The Restatement, however, provides only

that outrageous conduct may be some evidence of severe emotional distress, not that outrageous conduct can substitute for severe emotional distress.

When a plaintiff fails to produce any evidence of an essential element of her claim, the trial court's grant of summary judgment is proper. *See Guthrie v. Conroy*, 152 N.C. App. 15, 567 S.E.2d 403 (2002) ("because plaintiff failed to present evidence of this essential element of her claim, the trial court did not err in granting summary judgment for defendant"). In the instant case, plaintiff failed to present sufficient evidence of severe emotional distress to withstand defendant's motion for summary judgment. Therefore, entry of summary judgment was appropriate.

## II.

[2] We next consider the trial court's summary judgment order on plaintiff's claim for breach of fiduciary duty.

A claim for breach of fiduciary duty presupposes the existence of a fiduciary relationship between the parties. *Curl v. Key*, 311 N.C. 259, 316 S.E.2d 272 (1984); *Link v. Link*, 278 N.C. 181, 179 S.E.2d 697 (1971). A fiduciary relationship, broadly defined, is characterized by " 'a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence . . . , [and] 'it extends to any possible case in which a fiduciary relationship exists in fact, and in which there is confidence reposed on one side, and resulting domination and influence on the other.' " *Dalton v. Camp*, 353 N.C. 647, 651-52, 548 S.E.2d 704, 707-08 (2001) (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598, 160 S.E. 896, 906 (1931) (quoting 25 C.J. *Fiduciary* § 9, at 1119 (1921)). Determination of whether a particular set of facts establishes the existence of a fiduciary relationship may present a question of law for the court. *See Eastover Ridge, L.L.C. v. Metric Constructors, Inc.*, 139 N.C. App. 360, 367, 533 S.E.2d 827, 832 (concluding "as a matter of law" that evidence presented did not establish the existence of a fiduciary relationship), *disc. review denied*, 353 N.C. 262, 546 S.E.2d 93 (2000); *In re Estate of Ferguson*, 135 N.C. App. 102, 105, 518 S.E.2d 796, 799 (1999) (noting that "trial court found, and we agree, that as a matter of law a fiduciary relationship did not exist between [the parties]").

We agree with plaintiff that a personal service contract to provide funeral arrangements might, in appropriate factual circumstances,

give rise to a fiduciary relationship. However, at the time of the exhumation of Mr. Pacheco's body, defendant had not had any direct contact with plaintiff for at least seven years. Defendant had fully performed his part of the original contract between plaintiff and defendant. Indeed, the evidence tended to show that, by failing to pay her bill in full, plaintiff had not fully performed her side of the contract. On these facts, we cannot conclude that a fiduciary relationship existed between plaintiff and defendant at the time the acts giving rise to the instant suit were committed. Accordingly, the trial court did not err in granting summary judgment in favor of defendant on plaintiff's claim for breach of fiduciary duty.

For the reasons discussed above, the order of the trial court granting summary judgment for defendant is

Affirmed.

Judges TIMMONS-GOODSON and TYSON concur.