On Application for Rehearing

CRAWLEY, Judge.
The opinion of this court issued June 11, 2004, is withdrawn, and the following is substituted therefor.
James Kessler appealed to the Alabama Supreme Court from a summary judgment entered in favor of James R. Gillis, an attorney, in a legal-malpractice action brought pursuant to the Alabama Legal Services Liability Act (“ALSLA”), § 6-5-570 et seq., Ala.Code 1975. The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975.
In February 1999, Kessler and Saulter Development Corporation sued Kessler’s brother and several other defendants, alleging, among other claims, breach of contract and fraud in a real-estate-development transaction. Kessler hired and *1074 dismissed three attorneys before retaining Gillis to represent him and Saulter Development Corporation in the case. Gillis entered an appearance on December 21, 1999, and he filed an amended complaint on January 20, 2000. On January 31, 2000, the defendants served discovery requests on Kessler and Saulter Development. On March 24, 2000, the defendants filed a motion to compel and to impose sanctions against Kessler and Saulter Development for failure to respond to discovery. The trial court set a date for a hearing on the defendants’ motion for April 24, 2000.
On April 24, Gillis appeared on behalf of Kessler and Saulter Development, filed a motion to withdraw, and stated to the trial court that Kessler and Saulter Development had retained other counsel, William E. Bright, Jr., who would be taking over them representation. The trial court granted Gillis’s motion to withdraw and reset the hearing on the defendants’ motion for June 14, 2000; that hearing was subsequently rescheduled for June 12.[1] On May 2, Bright served on all parties of record a notice of appearance as counsel for Kessler and Saulter Development. The record indicates, however, that Bright did not file a notice of appearance with the circuit clerk until May 13. Meanwhile, on May 3, the circuit clerk had mailed copies of the order rescheduling the hearing on the defendants’ motion to June 12 to the attorneys of record and had not sent a notice of the rescheduled hearing to Bright.
On June 12, no one appeared on behalf of Kessler and Saulter Development and the trial court dismissed the case. The order of dismissal states, in pertinent part:
“After the case was pending and, for the most part, inactive, for almost one year, the Plaintiffs filed amended pleadings asserting new claims and bringing in new parties....
[[Image here]]
“Thereafter, on April 24, 2000, Plaintiffs counsel Mr. Gillis withdrew and advised the Court that attorney William E. Bright, Jr. would enter an appearance for the Plaintiffs.
“[The defendants] propounded interrogatories to the Plaintiffs on or about January 31, 2000.
“The Plaintiffs failed and refused to properly and timely respond to said interrogatories.
“On June 12, 2000, the Defendants appeared in person and/or through Counsel. Neither the Plaintiffs nor an attorney for the Plaintiffs appeared when the case was called.
“As of June 12, 2000, no new, different or other attorney had entered an appearance for the Plaintiffs.
“As of June 12, 2000, the Plaintiffs have failed to properly answer even a single interrogatory propounded to them by the Defendants on January 31, 2000.
“Accordingly, for all of the foregoing, and for good cause shown, the Court hereby dismisses all of the Plaintiffs’ claims against all of the Defendants, separately and severally, with costs taxed against the Plaintiffs, for which let execution issue.”
Bright filed a motion to reinstate the complaint. When the trial court denied that motion, Bright appealed to the Alabama Supreme Court. The supreme court transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975. This *1075 court dismissed the appeal as untimely. See Kessler v. Kessler, 807 So.2d 565 (Ala.Civ.App.2001).
In April 2002, Kessler sued Gillis and Bright, alleging claims under the ALSLA; seeking from Gillis an accounting of the $10,000 retainer he had paid;[2] and seeking from Bright an accounting of the $5,000 retainer he had paid. A year later, the circuit court entered a summary judgment in favor of Gillis and made that judgment final pursuant to Rule 54(b), Ala. R. Civ. P.
We review a summary judgment de novo. A motion for a summary judgment is to be granted .when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the non-movant to rebut the movant’s prima facie showing by ‘substantial evidence.’” Lee, 592 So.2d at 1038 (footnote omitted). “[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see Ala.Code 1975, § 12-21-12(d).
The Alabama Supreme Court has recognized the following principles with regard to a legal-malpractice action:
“ “What a plaintiff must prove, basically, is no different from what must be proved in any other negligence suit. “To recover, the [plaintiff] must prove a duty, a breach of the duty, that the breach was the proximate cause of the injury, and damages.” Herston v. Whitesell, 348 So.2d 1054, 1057 (Ala.1977). (Citations omitted.) “A claim for malpractice requires a showing that in the absence of the alleged negligence the outcome of the case would have been different.” Hall v. Thomas, 456 So.2d 67, 68 (Ala.1984). (Citations omitted.)’
“[Moseley v. Lewis & Brackin, 533 So.2d 513] at 515 [(Ala.1988)]. Moreover, with regard to the element of causation, ‘the plaintiff must show that, but for the defendant’s negligence, he would have recovered on the underlying cause of action.’ Johnson v. Horne, 500 So.2d 1024, 1026 (Ala.1986).”
Cribbs v. Shotts, 599 So.2d 17, 19 (Ala.1992). See generally W. Atchison & R. MacKenzie, The Professional Liability of Attorneys in Alabama, 30 Cumb. L.Rev. 453 (2000).
In support of his motion for a summary judgment, Gillis submitted a brief; the pleadings in the underlying case; Gillis’s April 24, 2000, motion to withdraw from representing Kessler and the trial court’s notation on the case action summary sheet granting that motion; an affidavit of Gillis; an affidavit of attorney John Madison, Jr., stating that Madison had reviewed the documents in the underlying case and had concluded that Gillis had not violated the standard of care required of him in his representation of Kessler; and the trial court’s order dismissing the complaint in the underlying case.
Gillis’s affidavit states, in pertinent part:
*1076 “On April 17, 2000, I sent a letter to ... Kessler stressing that I needed discovery information to provide to the defendants in the underlying case, but that I had not received anything from him. In this letter, I also cautioned ... Kes-sler that if he failed to comply with the discovery requests, the judge would certainly enter sanctions against him.... Specifically, I warned ... Kessler that his failure to provide discovery requests could result in dismissal of the underlying case.
“During the time I represented [Kes-sler], I had numerous discussions with ... Kessler regarding the necessity of bringing in another attorney with more real estate knowledge. One of the attorneys we discussed was William E. Bright, Jr. Sometime after these discussions, ... Kessler visited Mr. Bright without my knowledge and thereafter decided to retain Mr. Bright and terminate my services. My services were terminated on or about April 20, 2000. On April 21, 2000, I confirmed with Mr. Bright that he would be taking over representation of [Kessler] in the underlying case. I informed Mr. Bright of the April 24 hearing date at this time.
“On April 24, 2000, I filed a motion to withdraw as [Kessler’s] counsel on the ground that [he] had obtained other counsel, namely William E. Bright, Jr., to represent [him]. This motion was presented in open court and in the presence of opposing counsel. My motion to withdraw was the first issue to come before the Court at the hearing. I informed the Court that Mr. Bright was taking over the representation of [Kes-sler] and no one objected. After the Court granted my motion, I requested to be excused and, with the Court’s permission, I left. Immediately after this motion was granted, I delivered my case file ... to Mr. Bright’s office and met with Mr. Bright at that time. I informed Mr. Bright of all hearing dates of which I had notice by forwarding any notices I received from the Court to Mr. Bright.
“I was not the counsel for [Kessler] ... after April 24, 2000, and have no recollection of ever receiving a notice of a hearing on June 12, 2000.... ”
Madison’s affidavit states, in pertinent part:
“It is my opinion that the professional services rendered for [Kessler] during the time in question were properly rendered by Mr. Gillis, and that he is not guilty of negligence or professional neglect in the manner in which he represented [Kessler]....
“After Mr. Gillis’s withdrawal from the underlying case, his duties as counsel to [Kessler] terminated. Mr. Gillis had no duty to appear for [Kessler] at the June 12 hearing. It was proper for Mr. Gillis to forward any notes received from the Circuit Court of St. Clair County to [Kessler’s] new attorney, William E. Bright.”
Gillis’s submissions in support of his motion for a summary judgment made a pri-ma facie showing that Kessler terminated Gillis’s employment and hired Bright, whereupon Gillis moved to withdraw, informed the trial court that Bright was Kessler’s new attorney, and then, after his motion to withdraw had been granted by the trial court, delivered Kessler’s file to Bright. Gillis’s conduct appears, on its face, to comport with the requirements of Rule 1.16(d) of the Alabama Rules of Professional Conduct, which states:
“Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client’s interests, such as giving reasonable notice to the client, allowing time *1077 for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.”
In opposition to Gillis’s motion for a summary judgment, Kessler submitted his own affidavits; an affidavit and the deposition testimony of Clarence McDorman, an attorney who opined that Gillis’s representation of Kessler fell below the standard of care required by the ALSLA; the trial court’s order dismissing the underlying lawsuit; the retainer agreement between Gillis and Kessler; a letter dated March 3, 2000, conveying a settlement offer from an attorney for one of the defendants to Gillis; a letter dated April 23, 2000, from Gillis to Kessler advising Kessler that Gillis was withdrawing from representing Kessler; and a letter, dated April 24, 2000, from Gillis to Bright confirming the terms of a “referral agreement” between the two attorneys.
Kessler’s affidavit in opposition to the summary-judgment motion states:
“In the contract entitled ‘Retainer Agreement,’ [Gillis] agreed to represent me ... through settlement or judgment. ...
“The contract also provided that, in order for Mr. Gillis to get ‘permission to withdraw" from the case, he must give me written notice of his intent to do so. Mr. Gillis never gave me any such written notice before withdrawing, and I never terminated his representation of me. In fact, he never gave me any notice before withdrawing.
“... Mr. Gillis said that he needed another attorney with more real estate knowledge to help him and suggested William E. Bright, Jr. He said this on more than one occasion.
“I saw Mr. Bright after Mr. Gillis suggested I see him. I did not see him without Mr. Gillis’s knowledge; I saw him at Mr. Gillis’s suggestion, and Mr. Gillis and Mr. Bright talked. In fact, Mr. Bright, in structuring his fees, said that, in addition to his getting a $5,000.00 retainer, I would owe a 15% contingency, of which he would receive part and Mr. Gillis would receive part. Mr. Gillis said that he would need help and they would work together; that it was going to take more than one attorney to go against all of the attorneys on the other side. Mr. Bright was completing the team with his real estate expertise and Mr. Gillis with his trial expertise. Further proof that Gillis knew Bright was to be involved is that when I got to Bright’s office to see him, Gillis had a copy of the file there and maps and other documents. I retained Mr. Bright with Mr. Gillis’s knowledge, and I never terminated Mr. Gillis’s representation of me, never received any written notice of his intent to withdraw from my case before he did it, and never gave him permission to withdraw. By doing so without notice, Gillis violated the Retainer Agreement.”
McDorman’s affidavit stated that he had reviewed the documents, pleadings, and correspondence pertaining to the underlying action and the legal-malpractice action. For the following reasons, McDorman concluded that Gillis had failed to meet the standard of care under the ALSLA:
“[Kessler] never terminated Mr. Gillis nor did he give him permission to withdraw. ... Mr. Gillis did not list [Kes-sler’s] address on the certificate of service of his Motion to Withdraw, Mr. Gillis did not notify the Court Clerk of [Kessler’s] address for service of Court Motions, even though he knew that Mr. Bright had not made an appearance. At *1078 the April 24th hearing, Mr. Gillis informed the Court that Mr. Bright would be representing [Kessler], yet Mr. Bright failed to appear and Mr. Gillis knew he failed to appear. Mr. Gillis informed Mr. Kessler of the discovery hearing of April 24th, but did not inform or give him notice of his intention to withdraw, and that he was filing a motion to withdraw. In his letter advising Mr. Kessler of the discovery motion hearing, Mr. Gillis advised Kessler that it would not be necessary for Kessler to attend. Even though Mr. Gillis referred Mr. Kessler to Mr. Bright, and knowing Mr. Bright had not appeared in person at the hearing or by entry of appearance filed with the Court, and knowing he had told his client he need not appear and was not present to object, Mr. Gillis withdrew after representing to the Court that Mr. Bright was going to represent Mr. Kessler.”
The April 24, 2000, “referral agreement” letter from Gillis to Bright states:
“This letter is to confirm our agreement regarding my referral fee on this case. After talking with you this morning, it is my understanding that you are taking this case for a 15% contingency fee against an hourly amount. We have agreed that you will pay me 20% of your contingency fee if the case settles or goes to trial with a settlement or judgment of less than $700,000. If the case settles for $700,000 or greater, you will pay me a 25% referral fee on the entire amount paid to you. It is my understanding that any amount I get will be reduced by the $10,000 that has already been paid to me by Mr. Kessler; however, my referral fee will be based on the total amount of settlement or judgment. In other words, my 20% or 25% will be calculated before you deduct any money that has been paid to either you or me for hourly amounts, and if the case settles or tries for $700,000 or more, I will get 25%.”
I. The Questions of Duty and Breach of Duty
We first address the question whether Gillis owed a duty to Kessler on and after April 24, 2000, when he moved to withdraw. Kessler’s primary argument that Gillis provided substandard representation is based on Kessler’s belief that, if Gillis and Bright had a fee-division agreement, then Gillis “had a continuing duty to [Kessler] throughout the litigation of the underlying ease.”
Rule 1.5(e)(1) of the Alabama Rules of Professional Conduct contemplates three situations in which lawyers who are not in the same firm can divide a fee. All three situations outlined in Rule 1.5(e)(1)(a) through (c) require the client to be advised that a division of fees will occur. See Rule 1.5(e)(3), Ala. R. Profl Cond. Rule 1.5(e) provides:
“(e) A division of fee between lawyers who are not in the same firm, including a division of fees with a referring lawyer, may be made only if:
“(1) either (a) the division is in proportion to the services performed by each lawyer, or (b) by written agreement with the client, each lawyer assumes joint responsibility for the representation, or (c) in a contingency fee case, the division is between the referring or forwarding lawyer and the receiving lawyer;
“(2) the client is advised of and does not object to the participation of all the lawyers involved;
“(3) the client is advised that a division of fee will occur; and
“(4) the total fee is not clearly excessive.”
*1079 First, Rule 1.5(e)(1)(a), Ala. R. Profl Cond., would have authorized a fee division between Gillis and Bright if Gillis had associated Bright and had still continued to perform legal services for Kessler. The following statements in Kessler’s affidavit indicate that Kessler understood that Gillis was associating Bright, not referring the case to him: “Mr. Gillis said that he would need help and that [he and Bright] would work together”; “Mr. Bright was completing the team with his real estate expertise and Mr. Gillis with his trial expertise.” Of course, if Gillis had associated Bright then Gillis would have had a continuing duty to Kessler throughout the underlying action. See Comment to Rule 1.5 (stating that “[paragraphs (e)(1)(a) and (b) permit the lawyers in any type of matter to divide a fee on either the basis of the proportion of services they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object”). If one lawyer associates another with the understanding that the first lawyer will “continue an active role in the case,” there is no “referral” of the case and no “referral fee.” See Gaines, Gaines & Gaines v. Hare, Wynn, Newell & Newton, 554 So.2d 445, 449 (Ala.Civ.App.1989).
Second, Rule 1.5(e)(1)(b), Ala. R. Profl Cond., would have authorized Gillis and Bright to divide a fee if Kessler had, by written agreement, consented to the fee division; in that situation, Gillis and Bright would have assumed joint responsibility for the representation. It is undisputed that Kessler did not execute a written agreement consenting to the proposed fee division.
Third, Rule 1.5(e)(1)(c), Ala. R. Profl Cond., would have authorized the two lawyers to divide a fee if, as Gillis contends, he simply “referred” the case to Bright. The Comment to Rule 1.5 explains that, unlike paragraphs (e)(1)(a) and (b), paragraph (e)(1)(c) “permits the lawyers in a contingency fee matter to divide the fee without restriction other than disclosure to the client.” Unlike many other states, Alabama has historically allowed an unrestricted division of fees between a referring lawyer and a receiving lawyer. See Commentary to Rule 1.5, Ala. R. Profl Cond., “Comparison with Former Alabama Code of Professional Responsibility”:
“With regard to paragraph (e), [former] DR 2-107(A) permitted division of fees only if: ‘(1) The client consents to employment of the other lawyer after a full disclosure that a division of fees will be made.’ Alabama had rejected the other subdivisions of the Model DR which also required that ‘(2) The division is in proportion to the services performed and responsibility assumed by each.’ and ‘(3) The total fee does not exceed clearly reasonable compensation .... ’ Further, in a provision unique to Alabama, as found in [former] DR 2-103, it was said: ‘Nothing contained herein shall prohibit the division of fees with a forwarding lawyer. ’ A similar provision was added to the Model Rule at Rule 1.5(e) by the phrase ‘including a division of fees with a referring lawyer.’ ”
(Emphasis added.) Compare, e.g., Noris v. Silver, 701 So.2d 1238, 1240 (Fla.Dist.Ct.App.1997)(holding that, under the applicable Florida rule of professional conduct, a referring lawyer may be liable for a receiving lawyer’s malpractice because when fees are divided “each lawyer assumes joint legal responsibility for the representation”).
Under Kessler’s version of the facts, Gillis could not properly have referred the case to Bright because Gillis did not disclose to Kessler, pursuant to Rule *1080 1.5(e)(1)(c), Ala. R. Profl Cond., either his intent to withdraw or his proposed fee-division agreement with Bright before April 24. Even under Gillis’s version of the facts — -that Kessler dismissed him on April 20 and retained Bright in his stead— the validity of the referral agreement is in question; obviously, a lawyer whose client has dismissed him has no case to refer to another lawyer.
Gillis argues that Kessler’s affidavits in opposition to the motion for a summary judgment were “shams” because, he says, they contradicted Kessler’s earlier sworn testimony. It is settled that a party cannot create an issue of fact by filing a “sham” affidavit, i.e., one that contradicts the party’s earlier sworn testimony. See Bama Budweiser of Montgomery, Inc. v. Anheuser-Busch, Inc., 611 So.2d 238, 245 (Ala.1992). See also Liles v. Flatley, 643 So.2d 947 (Ala.1994). Typically, the claimed contradiction is between a party’s affidavit and his deposition. See, e.g., Tittle v. Alabama Power Co., 570 So.2d 601 (Ala.1990). In this case, however, Gillis argues that there is a contradiction between the affidavits Kessler submitted in opposition to the motion for a summary judgment and the allegations of Kessler’s complaint, which, Gillis argues, are equivalent to sworn statements because Kessler’s complaint was verified.
Although we have found no Alabama case specifically discussing whether a verified complaint is the equivalent of an affidavit for purposes of summary judgment, many federal courts and other state courts have held that a verified complaint is the equivalent of an affidavit if it meets the requirements of Rule 56(e), which are that it must (1) be made on personal knowledge; (2) set forth such facts as would be admissible in evidence; and (3) show affirmatively that the affiant is competent to testify to the matters stated therein. See, e.g., Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir., 1995); Pacheco v. Rogers & Breece, Inc., 157 N.C.App. 445, 448, 579 S.E.2d 505, 507 (2003). See generally 11 James W. Moore, Moore’s Federal Practice § 56.14[1][c] at 56-158 (3d ed. 2004)) (“A court may treat a verified complaint as an affidavit for purposes of summary judgment if it satisfies the standards for affidavits set out in Rule 56(e), but need not do so if the allegations, though verified, are insufficiently factual.”).
An affidavit premised on “information and belief’ does not meet the personal-knowledge requirement of Rule 56(e), Ala. R. Civ. P. Ex parte Head, 572 So.2d 1276, 1279 (Ala.1990). The verification to Kessler’s complaint stated that he vouched for the facts stated therein “according to [his] information, knowledge and belief.” Assuming without deciding that Kessler’s verified complaint meets the “personal knowledge” requirement of Rule 56(e), we conclude that there is no contradiction between the following allegations of his complaint:
“11. Defendant attorney Gillis continued to represent Plaintiff until April 24, 2000, just before which time he disclosed to plaintiffs he needed the help of another lawyer and suggested Defendant attorney William E. Bright be retained by plaintiffs as well.
“12. On April 19, 2000 plaintiffs retained defendant attorney William E. Bright for $5,000.00 and 15% of any settlement or recovery of the amounts claimed by defendant attorney Gillis.
[[Image here]]
“14. In a letter dated April 23, 2000, Defendant Gillis wrote Plaintiff Jim Kessler enclosing with his correspondence a Motion to Withdraw from representation on Mon *1081 day, April 24, 2000 which motion was granted without appearance or notice to plaintiff prior to the hearing.”
and the following averments of his affidavit:
“The contract also provided that, in order for Mr. Gillis to get ‘permission to withdraw’ from the case, he must give me written notice of his intent to do so. Mr. Gillis never gave me any such written notice before withdrawing, and I never terminated his representation of me. In fact, he never gave me any notice before withdrawing.”
Gillis argues that the facts alleged in the complaint indicate that Kessler knew of and approved of Gillis’s withdrawal as early as April 19 — because Kessler retained Bright on that day — and no later than April 23 — because Gillis’s withdrawal letter bore that date — and, therefore, that the allegations in the complaint contradicted the averment in Kessler’s affidavit that Gillis “never gave [Kessler] any notice before withdrawing.” We see no contradiction. Both the complaint and the affidavit indicated that Kessler thought he was retaining Bright in addition to, not instead of, Gillis. Moreover, Kessler testified that, although Gillis’s withdrawal letter was dated “April 23,” he did not receive the letter until after April 24, the date of the hearing.
We hold that Kessler presented substantial evidence creating an issue of material fact as to whether Gillis had a duty to Kessler and as to whether Gillis breached that duty on and after April 24, 2000. Kessler’s submissions in opposition to the motion for a summary judgment presented substantial evidence raising disputed issues of fact as to whether (1) Kessler contacted Bright and retained him without Gillis’s knowledge, thereby “terminating” Gillis’s representation (in which case Gillis could not have “referred” the case to Bright), or (2) whether Gillis “referred” the case to Bright and negotiated a fee-division agreement with Bright without Kessler’s consent, or (3) whether Gillis “associated” Bright. These disputed facts are material to determining the existence and scope of Gillis’s duty to Kessler and raise factual issues that are inappropriate for resolution at the summary-judgment stage of the ALSLA proceeding.
II. The Question of Proximate Cause
Having determined that there are material questions of fact regarding duty and breach of duty by Gillis, we must now determine whether Kessler met his burden of presenting substantial evidence that the breach of duty, if any, by Gillis was the proximate cause of Kessler’s injury.
The proximate-cause requirement in a legal-malpractice case has been stated in several different ways by the Alabama Supreme Court. Three frequently cited cases on a plaintiffs burden of proving proximate cause are Mylar v. Wilkinson, 435 So.2d 1237 (Ala.1983); Hall v. Thomas, 456 So.2d 67 (Ala.1984); and Johnson v. Horne, 500 So.2d 1024 (Ala.1986). In Mylar, the court stated that a plaintiff must show that “the result would have been different in the underlying action had [the] lawyer not been guilty of malpractice.” 435 So.2d at 1239. In Hall, the court said that “[a] claim for malpractice requires a showing that in the absence of the alleged negligence the outcome of the ease would have been different.” 456 So.2d at 68. In Johnson, the court held that “the plaintiff must show that, but for the defendant’s negligence, he would have recovered on the underlying cause of action.” 500 So.2d at 1026.
Although those three decisions predate the enactment of the ALSLA in 1988, our *1082 supreme court held in Sanders v. Weaver, 583 So.2d 1326 (Ala.1991):
“[T]he [ALSLA] did not change the case law involving a plaintiffs burden of proof in a legal service liability action based on an allegation of negligence in handling an underlying action. As in legal malpractice actions that arose pri- or to the effective date of the [ALSLA] (April 12, 1988), a plaintiff must introduce evidence (that would be sufficient to withstand a motion for summary judgment or a motion for a [judgment as a matter of law]) that in the absence of the alleged negligence, the outcome of the underlying case would have been different.”
583 So.2d at 1330 (citing Johnson v. Home and Hall v. Thomas).
In Pickard v. Turner, 592 So.2d 1016 (Ala.1992), the supreme court stated the plaintiffs burden as one of “proving] that the transaction would have had a different result if the alleged negligence had not occurred,” 592 So.2d at 1019, or “ ‘showing that the attorney’s wrongful conduct has deprived the client of something to which he would otherwise have been entitled,’ ” 592 So.2d at 1020 (quoting 7A C.J.S., Attorney and Client § 255 at 462 (1980)).
In Morrison v. Franklin, 655 So.2d 964 (Ala.1995), the supreme court explained that the plaintiff in a legal-malpractice case has a “dual burden of proving both the underlying claim and the instant malpractice claim.” 655 So.2d at 966-67. The court held that the plaintiff need not use “the magical phrase ‘but for the defendant’s malpractice, the plaintiffs would have prevailed in the underlying cause’ or words to that effect.” 655 So.2d at 966. Instead, the court decided,
“the allegations of malpractice, coupled with the general allegation of proximate cause, implicitly place upon the plaintiffs the dual burden of proving, subject to appropriate jury instructions, the underlying claim and the instant malpractice claim.... ”
655 So.2d at 966. Kessler’s proximate-cause allegation states:
“As a proximate consequence of said Defendant attorneys’ breach of said duty and standard of care, plaintiffs’ case was dismissed because his counsel did not appear and [plaintiff] did not know to appear. Plaintiff [was] denied his right to recovery of $3,000,000.00 in compensatory damages and $7,000,000.00 in punitive damages, as claimed by Defendant attorneys Gillis and Bright on behalf of Plaintiffs as set out in the amended complaint of attorney Gillis.”
Regardless of which proximate-cause formulation is used, it is clear that a “legal malpractice action must necessarily ... be viewed as two actions,” W. Atchison & R. MacKenzie, The Professional Liability of Attorneys in Alabama, 30 Cumb. L.Rev. at 485 n. 269, one action turning upon whether the lawyer was negligent and the other action turning upon whether, but for the lawyer’s negligence, the plaintiff would have prevailed in the underlying lawsuit. Section 6-5-579(a), Ala.Code 1975, a part of the ALSLA, recognizes that the dual issues presented in a legal-malpractice action may call for a “severance of the underlying action for separate trial.” That section provides:
“(a) If the liability to damages of a legal services provider is dependent in whole or in part upon the resolution of a[n] underlying action, the outcome of which is either in doubt or could have been affected by the alleged breach of the legal services provider standards of care, then, in that event, the court shall upon the motion of the legal services provider, order the severance of the underlying action for separate trial.”
*1083 Kessler, who would have had the burden of proof at trial of the legal-malpractice action, was the nonmovant for a summary judgment. In Ex parte General Motors Corp., 769 So.2d 903 (Ala.1999), the Alabama Supreme Court explained how the burdens of proof and production are allocated in a summary-judgment proceeding:
“ ‘If the burden of proof at trial is on the nonmovant, the movant may satisfy the Rule 56 burden of production either by submitting affirmative evidence that negates an essential element in the non-movant’s claim or, assuming discovery has been completed, by demonstrating to the trial court that the nonmovant’s evidence is insufficient to establish an essential element of the nonmovant’s claim.’ ”
769 So.2d at 909 (quoting Berner v. Caldwell, 543 So.2d 686, 691 (Ala.1989) (Houston, J., concurring specially)) (first emphasis in original; second emphasis added).
Because Kessler would have had the burden of proof at trial and was the non-movant for a summary judgment, Gillis could satisfy his burden of production either by negating the recovery-on-the-underlying-action element of Kessler’s malpractice claim or by “demonstrating to the trial court that [Kessler’s] evidence [was] insufficient to establish an essential element of [Kessler’s] claim.” Gillis did neither.
On appeal, Gillis argues that the following deposition testimony of Clarence McDorman, Kessler’s expert witness, negated the claim that, had the underlying action not been dismissed, Kessler would have recovered:
“Q. [By counsel for Gillis] Is this a true statement: You have not reviewed the evidence in the underlying case of Jim Kessler versus Charles Kessler, and therefore, you are unable to render an opinion as to whether or not Mr. Jim Kessler would have prevailed in the lawsuit of Kessler v. Kessler?
“A. Let me answer it that way: I reviewed the pleadings. I’m not aware — I have not — I did not see any evidence other than the pleadings themselves that was in this file. But I cannot render an opinion on the underlying case.
“Q. You can’t render an opinion as to who would have prevailed in Kessler v. Kessler, can you?
“A. No.”
The foregoing testimony did not negate the claim that Kessler would have prevailed in the underlying action. It established only that the witness was not competent to state an opinion about the merits of the claim.
Gillis also did not “demonstrat[e] to the trial court that [Kessler’s] evidence [was] insufficient to establish an essential element of [Kessler’s] claim.” In his motion for a summary judgment, Gillis never argued that Kessler had failed to establish that ultimately he would have prevailed in the underlying lawsuit. Instead, Gillis focused his argument on the contention that the trial court would have dismissed Kes-sler’s lawsuit, even in the absence of the alleged attorney malpractice, for Kessler’s failure to respond to discovery requests. Gillis’s brief in support of his motion for a summary judgment pointed out language in the trial court’s dismissal order indicating that the court dismissed the complaint in the underlying action based, in part, on Kessler’s failure to comply with discovery requests.
Gillis maintained that, even if an attorney had appeared for Kessler at the hearing on June 12, the trial court still would have dismissed the case. Gillis’s brief, which was attached to his summary-judgment motion and was filed the same *1084 day as his summary-judgment motion,[3] presented the issue as follows:
“In this case, [Kessler] allege[s] injury arising out of the dismissal of the[] underlying case. The underlying case was dismissed, [Kessler] claim[s], because no one appeared for [him] at the hearing on June 12, 2000. The order of dismissal in the underlying lawsuit belies this assertion. Judge Austin directed that the lawsuit initiated by [Kessler] was dismissed because [Kessler] did not produce discovery as required by the Court.”
The trial court’s order of dismissal did recite two bases for dismissing the complaint: the failure of Kessler or his attorney to appear on June 12 and the failure of Kessler to respond to discovery requests. The order then states, “Accordingly, for all of the foregoing, and for good cause shown, the Court hereby dismisses all of the plaintiffs’ claims.... ” (Emphasis added.)
It would be sheer speculation to decide that, if Bright or another attorney had appeared for Kessler on June 12, the trial court still would have dismissed the complaint for failing to respond to discovery requests.
“[T]he sanction of dismissal is the most severe sanction that a court may apply. Judicial discretion must be carefully exercised to assure that the situation warrants the imposition of such a sanction. Dismissal orders must be carefully scrutinized, and the plaintiffs conduct must mandate dismissal. We have held that ‘willfulness’ on the part of the noncomplying party is a key factor supporting a dishiissal.”
Iverson v. Xpert Tune, Inc., 553 So.2d 82, 87 (Ala.1989) (citations omitted). In a supplemental affidavit filed in opposition to the summary-judgment motion, Kessler stated that, before the April 24, 2000, hearing on the discovery motion, he had provided Gillis with the discovery information sought by the defendants:
“I met with Mr. Gillis on several occasions prior to April 17, 2000. At those meetings, I provided him with all documents concerning my case. On March 3, 2000, [an attorney for one of the defendants] wrote a settlement letter to Mr. Gillis offering to settle my ease for a value exceeding $600,000.00. I discussed this offer with Mr. Gillis and, based on his advice and his understanding of the case, we turned the offer down. He never advised me to accept the offer. He told me they would pay more and he thought the case would settle, especially because of the evidence I had given him, including a tape.”
(Emphasis added.) The averments in Kes-sler’s affidavit indicate that there was no “willful noncompliance” with discovery requests on Kessler’s part. The record does not support the conclusion that, if new counsel had appeared for Kessler on June 12 and made that argument, the trial court still would have dismissed the case. In any event, whether or not the complaint in the underlying action would have been dismissed for the violation of discovery rules was not the issue upon which Kessler had the burden of proof at trial or for which Gillis was required to demonstrate to the trial court that Kessler’s evidence was insufficient. Instead, the issue was whether, but for Gillis’s alleged negligence, Kessler *1085 would have recovered against the defendants in Kessler v. Kessler.
In opposition to the motion for a summary judgment, Kessler submitted the complaint in Kessler v. Kessler, as well as a letter conveying a $600,000 settlement offer from one of the defendants to Kes-sler. Although the rule is well-settled that an offer of compromise or settlement by one party to another in a civil action, whether made before or after litigation has begun, is generally inadmissible, see Super Valu Stores, Inc. v. Peterson, 506 So.2d 317, 321 (Ala.1987); Ala. R. Evid. 408, that rule does not apply to “evidence of compromise offers by persons not parties to the litigation[, which] should be admissible, if relevant to show their liability or the liability of the defendant.” 23 Charles A. Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure § 5303 at 191 (1980) (footnote omitted). See, e.g., Morlot Carpentry, Inc. v. Phillips, (No. 85-0097-WO, March 26, 1993) (D.Mass.1993) (not published in F.Supp.) (noting, in its discussion of the causation element of a legal-malpractice claim, that “[w]hile ... settlement offers would not be admissible to prove the quantum of damages owed by [the defendant in the underlying action] to the plaintiff under Rule 408 of the Federal Rules of Evidence, ... they are admissible under Rule 408 for other purposes, such as to show that the plaintiff would likely have recovered on a damage award against [that defendant]”); Young v. Jones, 149 Ga.App. 819, 256 S.E.2d 58 (1979).
We conclude that Kessler presented substantial evidence indicating that Gillis’s alleged breach of duty was the proximate cause of Kessler’s injury and that Gillis failed to argue or demonstrate to the trial court that Kessler’s evidence was insufficient to establish proximate cause — i.e., that, but for Gillis’s negligence, Kessler would have prevailed in the underlying real-estate-development action alleging fraud and breach of contract.
The summary judgment is reversed, and the cause is remanded for proceedings consistent with the principles expressed in this opinion.
OPINION OF JUNE 11, 2004, WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; REVERSED AND REMANDED.
YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur in the result, without writing.

. On May 2, 2000, the trial court, on its own motion, rescheduled the hearing for June 12. The case action summary sheet indicates that copies of the rescheduling order were sent to Gillis and the attorneys for all the defendants, but not to Bright.

. On appeal, Kessler argues only issues relating to the ALSLA. He neither raises nor argues the accounting issue, and we, therefore, do not address it.

. Raising the issue in brief was sufficient to comply with Rule 56(c), Ala. R. Civ. P. A summary-judgment motion is supported by materials that are "included in the motion or ... separately attached.” Northwest Florida Truss, Inc. v. Baldwin County Comm’n, 782 So.2d 274, 277 (Ala.2000).