JERRY W. WHITTEN v. BOB KING'S AMC/JEEP, INC. AND
R. L. KING, JR.

No. 96

(Filed 8 February 1977)

1. **Rules of Civil Procedure §§ 15, 56— pleadings amended to conform to evidence — amendment not precluded by summary judgment**

Where the evidence presented at a hearing upon a motion for summary judgment would justify an amendment to the pleadings, such amendment should not be precluded by entry of summary judgment; indeed, in proper cases it is desirable to treat the pleading as though it were amended to conform to the evidence presented at the hearing.

Whitten v. AMC/Jeep, Inc.

2. **Corporations § 25; Rules of Civil Procedure § 15— corporation's adoption of contract — complaint deemed amended to conform to evidence**

Although plaintiff's complaint did not specifically allege that corporate defendant adopted a contract made on its behalf by the individual defendant, evidence presented at the summary judgment hearing supported this theory, and the complaint should be treated as amended to conform to the evidence.

3. **Corporations § 25— contract prior to incorporation — adoption by corporation**

A corporation cannot ratify a contract made on its behalf prior to its incorporation, since it could not have authorized the contract at that time; however, the corporation adopts the contract and becomes bound by its terms if it accepts the benefits of the contract with knowledge of its provisions.

4. **Corporations §§ 8, 9, 25— contract by president and general manager — adoption by corporation — notice — knowledge of provisions**

Evidence was sufficient to show that corporate defendant adopted a contract made on its behalf prior to incorporation where such evidence tended to show that corporate defendant accepted the benefits of the contract by using the $5000 advanced by plaintiff as part of its initial capitalization, and at no time did corporate defendant attempt to repudiate the contract benefits previously obtained; moreover, the corporation accepted the benefits with knowledge of the provisions of the contract where the individual defendant, who made the contract with plaintiff, became the president and general manager of the corporate defendant and later became the sole shareholder of the corporation.

5. **Corporations § 8— notice to president as notice to corporation**

It is recognized in this jurisdiction that notice to the president of a corporation is notice to the corporation.

6. **Corporations § 7— knowledge of promoters — promoters who become stockholders — knowledge imputed to corporation**

The knowledge of promoters generally is not imputed to a corporation; an exception may exist where those promoters become directors and stockholders or controlling stockholders in the corporation.

7. **Contracts § 27— conflicting evidence on crucial issue — summary judgment improper**

The trial court erred in granting defendants' motions for summary judgment where plaintiff presented evidence that an agreement between him and individual defendant was intended as a purchase of stock in the corporation to be thereafter formed, while corporate defendant offered evidence tending to show that the agreement contemplated nothing more than a loan by plaintiff to individual defendant, and the written memorandum of the agreement was ambiguous as to the true intent of the parties.

ON *certiorari* to review the decision of the Court of Appeals reported in 30 N.C. App. 161, 226 S.E. 2d 530. This case was docketed and argued in the Supreme Court as No. 153, Fall Term 1976.

Plaintiff instituted an action to recover the value of 25% of the stock in defendant corporation or in the alternative to compel the transfer to him of 25% of the outstanding stock in said corporation. Plaintiff alleged that on 4 November 1968 he and individual defendant entered into a written agreement which provided:

LETTER

To Whom it may concern:

This is to verify that Jerry W. Whitten did invest five thousand dollars in Triangle Motor Sales Inc. This money was loaned to R. L. King, Jr. until such time as stock could be issued in the company which will be after American Motor Sales Corp. has been bought out. This money & any or all interest at 6% annually or dividends which would be due if this stock were in effect at present time. This to be based on a percentage of the capital which was used to start operation of Triangle Motor Sales Inc. May 1968. The interest or dividends will be used to purchase further interest in the company if Mr. Whitten so desires. This holds no responsibility over Mr. King personally but only to the Corporation of Triangle Motor Sales Inc.

s/ R. L. KING, JR.
Pres.
Triangle Motor Sales Inc.

The complaint further alleged that the loan to corporate defendant by American Motor Sales Corporation had been satisfied in August 1974 and that plaintiff had made demand on defendants for the issuance of stock due him or for the payment of the sum of $95,000, the value of the stock to which he was entitled. He thereafter filed an amended complaint setting forth an alternative cause of action which, in summary, alleged that defendant King exceeded his authority in entering into the contract on 4 November 1968 and thereby became personally liable to execute the obligations of the contract.

Each defendant filed a separate answer. Corporate defendant responded that the proposed agreement was not a stock agreement but was only a memorandum of a loan agreement between plaintiff and individual defendant. Corporate defendant further alleged that if it should be determined that the writing was a stock agreement, then individual defendant acted outside the scope of his authority and his lack of authority was known to plaintiff.

Defendant King denied liability on the basis of the specific language in the last sentence of the above-quoted writing.

Defendants each filed a motion for summary judgment supported by defendant King's affidavit which, in summary, averred that: Neither he nor the corporate defendant had ever entered into a stock purchase agreement with plaintiff. The transaction was only a loan to the corporation and there was no intention to impose liability on defendant King. When the writing was signed by him on 4 November 1968, he was the president and general manager of Triangle Motor Sales, Inc., corporate defendant's predecessor in interest, but at that time all of the voting stock was owned by American Motors. He had no authority to bind the corporation to issue stock and this fact was known to plaintiff. By deposition defendant King further stated:

I am R. L. King, Jr. . . . and am President and general manager of Bob King's AMC/Jeep, Inc. I have served as President and general manager since May of 1968, the date of the incorporation of the original business. . . .

. . . I originally talked with Mr. Whitten regarding the creation of the corporation in January or February of 1968. I don't recall exactly what was said in the conversation. . . . In February, March or April of 1968, Mr. Whitten did give me $5,000, which I deposited into my bank account. In May I took the money along with some of my own money and the money we had borrowed to start the company and put it into a company account, the account of Triangle Motor Sales, Inc. At that time I put $15,000 of my money into the account along with Mr. Whitten's $5,000 and the $100,000 we borrowed from American Motors and Commercial Credit. . . . The American Motors' loan had no time limit for its repayment, it has been repaid having been paid off in February of 1974.

Plaintiff filed an affidavit in which he stated that in the early months of 1968 he agreed with defendant King to invest $5,000 in an automobile business to be incorporated in Winston-Salem as a franchise dealer for American Motors. In return he was to receive a 25% interest in the business and stock representing this interest would be issued to him when American Motors had been paid off for a loan to the corporation secured by all of the voting stock. He borrowed $5,000 at 10% interest and delivered this sum to defendant King. His deposition was also before the court and this deposition was consistent with his affidavit. We quote excerpts from the deposition which tend to clarify plaintiff's position:

> . . . [T]he contract, a copy of which is attached to the Complaint and marked Exhibit "A," was written. This was the first written agreement that we had and is the only agreement in writing that I had with the company. At the time the contract was written, Bob King's AMC/Jeep, (Triangle Motor Sales, Inc.) was a dealer owned corporation, owned by American Motors. . . . Mr. King drew the contract himself. . . .

> . . . I gave $5,000 directly to Mr. King in March of 1968, pursuant to our prior discussions to invest in the business. We had previously agreed that I would be a stockholder but a silent stockholder. . . .

On 17 November 1975 Judge Seay allowed defendants' motions for summary judgment and dismissed the action on its merits. Plaintiff appealed and the Court of Appeals affirmed as to corporate defendant, vacated the judgment as to defendant King, and remanded the cause for further proceedings. Both plaintiff and defendant King petitioned for discretionary review pursuant to G.S. 7A-31. We allowed plaintiff's petition. Defendant's petition was denied.

*Henry C. Frenck for plaintiff.*

*White and Crumpler, by Fred G. Crumpler, Jr. and G. Edgar Parker, for defendant.*

BRANCH, Justice.

The sole question before us is whether the Court of Appeals erred in concluding that the trial judge properly allowed the

motion for summary judgment in favor of the corporate defendant, Bob King's AMC/Jeep, Inc.

The entry of summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). The burden of establishing the absence of any genuine issue as to a material fact rests on the moving party. *Kidd v. Early*, 289 N.C. 343, 222 S.E. 2d 392. If the other party opposes the motion with evidentiary materials which indicate the existence of a genuine issue of material fact, or if the movant's own supporting materials suggest the existence of such an issue, then the motion must be denied. *Kidd v. Early, supra.*

Plaintiff alleged in both his original complaint and his amended complaint that *"on or about the 4th day of November, 1968* the plaintiff and the defendant corporation through its president R. L. King, Jr., *entered into a contract* for the sale and transfer of stock. . . ." [Emphasis added.] However, all the evidence presented at the hearing on the motion for summary judgment tends to show that the alleged agreement (whether it be plaintiff's version or defendant's version) was orally entered into prior to the acknowledged date of incorporation of Triangle Motor Sales, Inc. in May of 1968. The written contract of 4 November 1968 was merely a memorandum reflecting the terms of that prior agreement. The deposition of plaintiff reveals the following pertinent information:

> . . . I gave $5,000 directly to Mr. King in March of 1968, pursuant to our prior discussions to invest in the business. We had previously agreed that I would be a stockholder but a silent stockholder.

> \* \* \*

> . . . In November of 1968 he reduced this agreement to writing which is Exhibit "A", attached to the Complaint filed herein.

The deposition testimony of individual defendant is consistent with this chronology of events:

> . . . In February of 1968 we discussed his coming to Winston to work for me. . . . At that time we did talk about Mr. Whitten investing in the corporation, about him loan-

ing me money for a business. . . . He agreed to loan me
$5,000. . . . In February, March or April of 1968, Mr.
Whitten did give me $5,000, which I deposited into my bank
account.

\*   \*   \*

. . . Prior to the statement [Exhibit "A"] we had only a
verbal agreement. When Mr. Whitten gave me the $5,000,
he had never had anything in writing. He subsequently
asked me to prepare this statement. We had previously
agreed that he was going to loan me $5,000. We reduced
the agreement to writing. . . .

[1, 2] Although the complaint did not specifically allege that
corporate defendant adopted the contract made on its behalf,
we are of the opinion that the evidence presented at the hearing
supported this theory.

It is recognized by case law and leading treatises that
where the evidence presented at a hearing upon a motion for
summary judgment would justify an amendment to the plead-
ings, such amendment should not be precluded by entry of sum-
mary judgment. Indeed, in proper cases it is desirable to treat
the pleading as though it were amended to conform to the evi-
dence presented at the hearing. *Freeman v. Marine Midland
Bank-New York*, 494 F. 2d 1334; *Rossiter v. Vogel*, 134 F. 2d
908; 6 Moore's Federal Practice ¶ 56.10 (2d ed. 1976); Wright
& Miller, Federal Practice and Procedure: Civil § 2738. *See
also Bank v. Gillespie*, 291 N.C. 303, 230 S.E. 2d 375. Under the
facts of instant case, it is both proper and desirable that the
complaint be treated as amended to conform to the evidence.
We hasten to add that it is the better procedure at all stages
of a trial to require a formal amendment to the pleadings.

[3] A corporation cannot ratify a contract made on its behalf
prior to its incorporation, since it could not have authorized
the contract at that time. However, the corporation adopts the
contract and becomes bound by its terms, if it accepts the bene-
fits of the contract with knowledge of its provisions. *Smith v.
Ford Motor Co.*, 289 N.C. 71, 221 S.E. 2d 282; *McCrillis v.
Enterprises*, 270 N.C. 637, 155 S.E. 2d 281; Robinson, North
Carolina Corp. Law § 2-4 (2d ed. 1974); 18 Am. Jur. 2d, Corpo-
rations § 122.

[4] There can be no doubt that corporate defendant accepted
the benefits of the contract between plaintiff and individual

defendant when the $5,000 advanced by plaintiff was used as a part of its initial capitalization. At no time has corporate defendant attempted to repudiate the contract benefits previously obtained. Rather, it has retained plaintiff's initial contribution as a part of its working capital at all times prior to the institution of this action. Nevertheless, before a corporation can be held to have adopted a prior contract of its promoter, it must not only appear that it has accepted the benefits of the contract, but also that it did so with knowledge of its provisions. *McCrillis v. Enterprises, supra*. It is our opinion that in instant case the corporation accepted the benefits with knowledge of the provisions of the contract.

[5]    It is recognized in this jurisdiction that notice to the president of a corporation is notice to the corporation. *Patterson v. Henrietta Mills,* 219 N.C. 7, 12 S.E. 2d 686.

The facts of this case disclose that from the formation of the corporation defendant King was its president and general manager. He received the money from plaintiff and placed it in the corporate account as soon as the account was opened.

[6]    Assuming, *arguendo,* that such notice to the president and general manager was not sufficient to impute knowledge to the corporation, we find another basis for our conclusion that the corporation was fixed with notice. In 18 Am. Jur. 2d, Corporations § 123, we find the following pertinent statement:

> As a rule, the knowledge of the promoters cannot be imputed to the corporation, although an exception to the rule may exist in a case where the promoters become directors and stockholders in the corporation or are the controlling stockholders.

*See also Federal Land Value Ins. Co. v. Taylor,* 56 F. 2d 351.

In instant case the deposition of plaintiff, which was offered in opposition to the motion for summary judgment, contained the following testimony:

> . . . In October of 1974 Mr. King was trying to buy a boat from me and I asked him whether American Motors had been paid off and Mr. King responded that they had and he was trying to work out a deal where he would be able to pay my percentage of the company, Mr. King delivered a check to me for $1,000, dated August 16, 1974, and two

months prior to that date he told me American Motors had been paid off. That would be in June of 1974.

\*   \*   \*

At the time Mr. King gave me the $1,000 check, he just said this was going to be a start of the money that I was due. He never told me how much I was due. He said he hadn't had a chance to figure out yet. He told me that he hadn't had a opportunity to consult the bookkeeper and he would get the net worth of the business and then pay me. . . .

[4] There was evidence that in October of 1974, when corporate defendant still retained and used the benefits of plaintiff's performance under the prior contract, the loan to American Motors had been fully repaid, at which time all stock in corporate defendant was transferred to individual defendant. At that point the sole shareholder, president and general manager of the corporation had complete knowledge of the provisions of the contract and such knowledge, therefore, became the knowledge of the corporation.

[7] Plaintiff has presented evidence which tends to show that the agreement made in early 1968 between him and individual defendant was intended as a purchase of stock in the corporation to be thereafter formed. On the other hand, corporate defendant has offered evidence tending to show that the agreement contemplated nothing more than a loan by plaintiff to individual defendant. The written memorandum of that agreement is ambiguous as to the true intent of the parties. The heart of a contract is the intention of the parties. *Pike v. Trust Co.*, 274 N.C. 1, 161 S.E. 2d 453. Since the evidence presented by both sides in this case is diametrically opposed on this crucial issue, the motion for summary judgment should have been denied.

For the reasons stated, the decision of the Court of Appeals is reversed. This cause is remanded to that court with directions that it be returned to the Superior Court of Forsyth County with an order that the entry of summary judgment be vacated and that there be a trial on the issues raised by the pleadings and evidence.

Reversed and remanded.