343 So.2d 675 (1977)
John S. STORY, Appellant,
v.
J.M. FIELDS, INC., Appellee.
No. CC-359.
District Court of Appeal of Florida, First District.
March 18, 1977.
*676 James F. McKenzie, Pensacola, for appellant.
William Fisher, III, of Fisher, Bell & White, Pensacola, for appellee.
SMITH, Judge.
Story appeals from an adverse judgment entered on a directed verdict for appellee Fields at the close of Story's evidence in a jury trial. Story's claim is that Fields, in an effort to collect a consumer debt of Story's, engaged in practices prohibited by Section 559.72 and made actionable by Section 559.77, Florida Statutes (1975). The question is whether Story's evidence made a case for the jury.
The trial court correctly eliminated from the jury's consideration, for lack of evidence, Story's assertions that Fields unlawfully simulated judicial process, that Fields disclosed information affecting Story's reputation to persons whom Fields should have known had no legitimate business need for the information, and that Fields' representative used "willfully abusive language in communicating with the debtor or his family." Section 559.72(5), (8), (10). We believe the trial court erred in holding the evidence insufficient on Story's claim that Fields willfully communicated with him and his family with such frequency as to constitute harassment under Section 559.72(7):
"In collecting consumer claims, ... no person shall:
.....
"(7) Willfully communicate with the debtor or any member of his family with such frequency as can reasonably be expected to harass the debtor or his family... ."
Story considered himself aggrieved by Fields' failure to repair a Fields brand air conditioner bought 15 months earlier. Story therefore advised Fields' credit manager, Allen, that he intended not to make payments on other merchandise Story had purchased on credit until the air conditioner was repaired. Story's evidence, which Allen substantially contradicted, tended to prove that Allen then telephoned Story at his home, at the residences of other members of his family, and at his business places to demand payment of Story's debt. According to Story's evidence, which we must accept in determining the propriety of a directed verdict, the telephone calls came almost daily, sometimes two or three times daily, and amounted to at least 100 calls over a period of five months. Story testified that he returned some but by no means all of Allen's calls, spoke with him at least once a week, and finally told Allen to stop bothering him and to take the matter to court, for he did not intend to pay.
We do not underestimate the difficulties presented by the deceptively simple language of Section 559.72(7). How frequent must communication be to constitute harassment? Suggestions of a wholly quantified standard seem artificial, because the effect of repeated telephone calls is colored by their tone and purpose. See Annot., 56 A.L.R.3d 457, 469-73 (1974). The proposers of legislation similar to Section *677 559.72(7) suggest that such an "admittedly imprecise" provision invokes the "role of the courts ... to reflect contemporary standards of fair conduct... ." Scott and Strickland, Abusive Debt Collection  A Model Statute for Virginia, 15 Wm. & Mary L.Rev. 567, 585 (1974). If that is so, and we have little doubt of it, we know it is ordinarily the business of juries, not of judges, to reflect such standards. For good or ill, this legislation largely commits to juries the double role of defining appropriate standards and applying them on a case by case basis, after considering not only the frequency of the calls but also the legitimacy of the creditor's claim, the plausibility of the debtor's excuse, the sensitivity or abrasiveness of the personalities and all other circumstances that color the transaction.
Section 559.72(7) is not entirely without semblance of objective, predictable standards. It requires willfulness, and thus recognizes that:
"Unless some latitude is given the creditor to invade, to a reasonable extent, the debtor's right of privacy, without incurring liability, we may well end up with the result that the creditor will find it preferable to proceed immediately with legal action when a debt becomes in default, without any warning to the debtor, rather than run the risk of being answerable to a supersensitive debtor... ." Household Finance Corp. v. Bridge, 252 Md. 531, 543, 250 A.2d 878, 885-86, 56 A.L.R.3d 446, 455 (1969).
Our Supreme Court has differentiated between conduct which subjects a creditor to liability for actual or statutory damages and conduct which subjects him additionally to conventional punitive damages: the former remedy is appropriate when willfulness is shown but "the legal standard of malice is not met" and the latter sanction is applied when "malicious intent" is proved. Harris v. Beneficial Finance Co. of Jacksonville, 338 So.2d 196, 200 (Fla. 1976). Thus willfulness is as defined by the Court in Chandler v. Kendrick, 108 Fla. 450, 452, 146 So. 551, 552 (1933), characterizing language in the usury statute:
"A thing is willfully done when it proceeds from a conscious motion of the will, intending the result which actually comes to pass. It must be designed or intentional, and may be malicious, though not necessarily so."
See also Dezell v. King, 91 So.2d 624, 626 (Fla. 1956). Malice, on the other hand, imports a wrongful act done to inflict injury or without a reasonable cause or excuse. Wilson v. O'Neal, 118 So.2d 101 (Fla.1st DCA 1960).
The standard that emerges from Section 559.72(7) therefore concerns the purpose as well as the frequency of the creditor's calls. Proof of numerous calls does not make a jury issue on liability if all must agree the creditor called only to inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation. The trier of fact may consider such communications harassing in their frequency, however, when they continue after all such information has been communicated and reasonable efforts at persuasion and negotiation have failed. Beyond that point communication "can reasonably be expected to harass the debtor or his family," because it tends only to exhaust the resisting debtor's will. If the creditor intends that likely effect, further communication is willful and actionable. If his communications evidence a purpose to inflict insult and injury, or are wholly without excuse, punitive damages may be awarded.
The jury here could properly have considered that appellee Fields willfully communicated with Story and members of his family with such frequency as could reasonably be expected to harass them. Proof of almost daily calls amounting to more than 100 in a five month period, continuing after Story told Fields' representative to quit calling and go to court, was sufficient to present a case for the jury on the issue of actual or statutory damages. Even under Story's evidence, however, Fields' calls were without invective; they were made during normal business hours; *678 and Fields' demand for payment did not lack cause. The calls were not malicious, and the issue on punitive damages was properly withdrawn from the jury. Wilson v. O'Neal, supra; contrast Azrikan v. O'Brien, 173 So.2d 711 (Fla.3d DCA 1965). The case will be remanded for a new trial on the issues of liability and actual or statutory damages.
REVERSED.
RAWLS, Acting C.J., and ERVIN, J., concur.