HARRY J. WILLIAMS, AND GLENDA V. WILLIAMS, PLAINTIFFS v. HOMEQ SERVICING CORPORATION F/K/A THE MONEY STORE, DEFENDANT

No. COA06-674

(Filed 3 July 2007)

**1. Appeal and Error— preservation of issues—notice of appeal from summary judgment—sufficient assignment of error**

Defendant's motion to dismiss plaintiffs' appeal based on an alleged failure to specifically assign error to the trial court's order as required by N.C. R. App. P. 10 is denied because a notice of appeal from a summary judgment order is itself sufficient to assign error to the order of summary judgment.

**2. Emotional Distress— negligent infliction—severe mental condition—insufficient evidence**

The trial court properly entered summary judgment for defendant loan servicer on plaintiffs' claim for negligent infliction of emotional distress based upon defendant's repeated phone calls and debt collection practices where the only evidence plaintiffs offered in support of their claim was their testimony that they suffer from chronic depression, but they conceded that they have never been diagnosed by any doctor as suffering from chronic depression or any other type of severe mental condition.

**3. Creditors and Debtors— unfair debt collection—telephone calls to place of employment—statute of limitations**

Plaintiff mortgagor's claim against defendant loan servicer for unfair debt collection under N.C.G.S. § 75-52(4) based upon

telephone calls to his place of employment was barred by the four-year statute of limitations of N.C.G.S. § 75-16.2 where the claim was brought more than four years after plaintiff retired from his employment.

**4. Creditors and Debtors— unfair debt collection—wrongful charges and fees—correction of improprieties**

Summary judgment was properly entered for defendant loan servicer on plaintiff mortgagor's claim for unfair debt collection under N.C.G.S. § 75-52(2) based upon the alleged wrongful imposition of charges and fees where improperly imposed late fees and improper application of suspense funds were reversed and corrected.

**5. Creditors and Debtors— telephone harassment by debt collector—genuine issue of material fact**

Summary judgment was improperly entered for defendant loan servicer on plaintiff mortgagor's claim under N.C.G.S. § 75-52(3) for telephone harassment by a debt collector where defendant's records showed that plaintiff and his wife were called by defendant's employees at least 2,200 times, up to six time per day, over a six-year period; plaintiff contends the calls were rude, abrasive and demeaning; and plaintiff testified to specific calls in which he felt particularly harassed by defendant's employees.

**6. Creditors and Debtors— telephone harassment by debt collector—calls within limitations period—admissibility of calls outside limitations period**

Plaintiff mortgagor's claim against defendant debt servicer under N.C.G.S. § 75-52(3) for telephone harassment by a debt collector was not barred by the four-year statute of limitations where plaintiff received harassing telephone calls at home within the limitations period. Plaintiff may offer evidence of harassing telephone calls that occurred outside the statute of limitations period to prove his claim for calls that occurred within the period but may not recover for calls that occurred beyond the four-year limitations period.

**7. Creditors and Debtors— unfair debt collection—harassing telephone calls—actual injury**

Plaintiff mortgagor showed sufficient actual injury from defendant loan servicer's harassing telephone calls to support his claim for unfair debt collection where plaintiff offered evi-

**WILLIAMS v. HOMEQ SERVICING CORP.**

[184 N.C. App. 413 (2007)]

dence through his deposition and affidavit, as well as the deposition of his wife, tending to show that the telephone calls caused him emotional distress. Actual injury does not mean out-of-pocket damages.

**8. Creditors and Debtors— collection agency—exemption— estoppel**

The trial court properly dismissed plaintiff mortgagor's claims against defendant loan servicer for prohibited acts by a collection agency under N.C.G.S. § 58-70 because: (1) defendant is the type of bank subsidiary meant to be exempt under N.C.G.S. § 58-70-15(c)(2), and a failure to assert the exemption in the pleadings does not bar defendant from raising it at a hearing for summary judgment; and (2) although defendant held a collection agency permit as insurance against subjecting its business and employees to criminal prosecution, there is no legal authority to impose liability on a party for simply holding a permit when the party is otherwise exempt from the statute.

Judge JACKSON concurring in part and dissenting in part.

Appeal by plaintiffs from judgment entered 11 January 2006 by Judge J.B. Allen, Jr. in Alamance County Superior Court. Heard in the Court of Appeals 14 December 2006.

*Clark Bloss & Wall, PLLC by John F. Bloss, for plaintiffs-appellants.*

*Womble Carlyle Sandridge & Rice, PLLC, by Christopher T. Graebe, for defendant-appellee.*

CALABRIA, Judge.

Harry J. Williams ("Mr. Williams") and Glenda V. Williams ("Mrs. Williams") (collectively "the plaintiffs") appeal from summary judgment entered in favor of defendant, HomEq Servicing Corporation ("HomEq"). We affirm in part and reverse and remand in part.

In 1996, Mr. Williams refinanced his home in Mebane, North Carolina, by executing a promissory note in the amount of $77,600.00 secured by a deed of trust executed by the Williams to lender R.& R. Funding Group, Inc. Since Mrs. Williams did not sign the promissory note, she was not a party to the loan. The loan was subsequently assigned to TMS Mortgage, Inc., which later changed its name to HomEq. As servicer of the loan, HomEq performed bookkeeping

services, collected payments, and ensured that property taxes and insurance were paid.

For the first few months of the loan, Mr. Williams made all payments on the loan, often after the grace period but before the next payment was due. However, in August of 1996, HomEq's system recorded Mr. Williams had stopped payment on the check for the August 1996 payment. Mr. Williams denied stopping payment on the check. However, he did not produce any evidence during discovery showing the check was not stopped. As a result of the alleged stopped payment, Mr. Williams fell one month behind in his mortgage payments. In August of 1999, he again missed a payment, rendering him two months behind in his mortgage payments.

Sometime in 2000, Mr. Williams allowed their homeowners' insurance to lapse. As per the mortgage agreement, HomEq purchased a policy for the property and notified the plaintiffs to reimburse HomEq for the insurance. Mr. Williams continued to pay the monthly mortgage payment but did not pay the additional funds required to repay the insurance. As a result, a portion of his monthly mortgage payment was used each month to repay the insurance. The remaining balance of the payment was applied to the mortgage as an incomplete payment. After several months of incomplete payments, the plaintiffs accumulated an overdue balance equivalent to an entire monthly payment on the mortgage. Mr. Williams was notified by HomEq that he was three months in arrears, he was in default, and foreclosure proceedings were imminent. Mr. Williams did not believe he was in default and hired counsel to represent him in the matter. Mr. Williams' attorney corresponded with HomEq as well as with the North Carolina and California Attorney General's Offices.

In October of 2001, HomEq instituted foreclosure proceedings. In November of 2001, the plaintiffs signed a "Default Forbearance Agreement." Under the agreement, HomEq would stay foreclosure proceedings if the plaintiffs would admit they were in default and agree to pay an incrementally higher payment each month over a 24-month period. The agreement also stated the plaintiffs would be held in default for any overdue liens, taxes, or insurance, and reserved HomEq's right to pay any of these overdue items and allocate any portion of the plaintiffs' monthly payment as reimbursement for the cost of the overdue items before applying the payment to the mortgage.

During the 24-month payment period, Mr. and Mrs. Williams failed to pay their property taxes. HomEq paid the taxes and added

WILLIAMS v. HOMEQ SERVICING CORP.

[184 N.C. App. 413 (2007)]

the amount paid for the taxes to Mr. Williams' monthly payment. Although Mr. Williams paid on time, he continued to pay the amount of the original monthly payment agreed to under the payment plan. Therefore, Mr. Williams failed to pay the additional amount that had been adjusted for the property taxes even though HomEq informed Mr. Williams that he needed to repay the property taxes. Mr. Williams' failure to pay additional fees for the taxes resulted in default of the forbearance agreement, and HomEq again instituted foreclosure proceedings.

On 3 February 2005, the plaintiffs brought an action against HomEq, alleging prohibited acts by a collection agency, prohibited acts by debt collectors, usury, actual/constructive fraud, unfair and deceptive trade practices, and negligent infliction of emotional distress. A hearing for summary judgment was held 3 January 2006. On 11 January 2006, summary judgment was granted for defendant on all claims. Plaintiffs appeal from the order granting summary judgment.

The standard of review for a trial court's grant of a motion for summary judgment is *de novo. Stafford v. County of Bladen*, 163 N.C. App. 149, 151, 592 S.E.2d 711, 712 (2004). Viewing the evidence in the light most favorable to the non-moving party, we determine if any genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Bruce-Terminix Co. v. Zurich Ins. Co.*, 130 N.C. App. 729, 733, 504 S.E.2d 574, 577 (1998). "The showing required for summary judgment may be accomplished by proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense." *Dawes v. Nash County*, 357 N.C. 442, 445, 584 S.E.2d 760, 762 (2003) (citations omitted). In determining if a grant of summary judgment is proper, we consider "admissions in the pleadings, depositions on file . . . affidavits, and any other material which would be admissible in evidence or of which judicial notice may properly be taken." *Thompson v. First Citizens Bank & Tr. Co.*, 151 N.C. App. 704, 707, 567 S.E.2d 184, 187 (2002).

## I. Motion to Dismiss the Appeal

[1] HomEq has moved to dismiss the appeal asserting the plaintiffs' assignments of error do not comply with Rule 10 of the North Carolina Rules of Appellate Procedure because they fail to specifically assign error to the trial court's order. The plaintiffs' assignments of error are:

1. The Superior Court erred in granting summary judgment in favor of defendant on plaintiffs' claims under G.S. §§ 58-70-1, *et seq.* . . .

2. The Superior Court erred in granting summary judgment in favor of defendant on plaintiffs' claims under G.S. §§ 75-50, *et seq.* . . .

3. The Superior Court erred in granting summary judgment in favor of defendant on plaintiffs' claim of Usury.

4. The Superior Court erred in granting summary judgment in favor of defendant on plaintiffs' claim of Actual/Constructive Fraud. . . .

5. The Superior Court erred in granting summary judgment in favor of defendant on plaintiffs' claims under G.S. §§ 75-1.1, *et seq.* . . .

6. Whether the Superior Court erred in granting summary judgment in favor of defendant on plaintiffs' claim of Negligent Infliction of Emotional Distress. . . .

In *Nelson v. Hartford Underwriters Ins. Co.*, 177 N.C. App. 595, 630 S.E.2d 221 (2006), this Court recently reaffirmed that a notice of appeal from a summary judgment order is itself sufficient to assign error to the order of summary judgment. The reasoning is that "[a]n appeal from an order granting summary judgment raises only the issues of whether, on the face of the record, there is any genuine issue of material fact, and whether the prevailing party is entitled to a judgment as a matter of law." *Id.* at 601, 630 S.E.2d at 226-27 (citations omitted). *See also, Ellis v. Williams*, 319 N.C. 413, 415, 355 S.E.2d 479, 481 (1987). Therefore, the plaintiffs' assignments of error are sufficient to comply with Appellate Rule 10.

## II. *Negligent Infliction of Emotional Distress*

[2] The plaintiffs contend they suffered severe emotional distress as a result of HomEq's repeated phone calls and aggressive debt collection practices. In order to recover for negligent infliction of emotional distress in North Carolina, the plaintiff must prove: "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct

did in fact cause the plaintiff severe emotional distress." *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990). "Severe emotional distress" is defined to mean "any emotional or mental disorder, such as, for example, neurosis, psychosis, chronic depression, phobia, or any other type of *severe and disabling* emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Id.*, 327 N.C. at 304, 395 S.E.2d at 97 (emphasis added). The question before this Court is whether the plaintiffs presented sufficient evidence to establish they have suffered from severe emotional distress. We hold they have not.

Mr. Williams alleges HomEq's repeated phone calls to his place of employment placed him under an undue amount of stress because he believed he would lose his job in addition to his home. As a result, Mr. Williams claims he suffered from moderate chronic depression. Mrs. Williams also claims she suffered moderate chronic depression as a result of watching her husband suffer. Mrs. Williams has been prescribed sleep aids for her depression, but she concedes she was unable to locate a doctor who would testify Mrs. Williams' disorder is caused by HomEq's conduct.

Although severe emotional distress is defined in terms of diagnosable emotional or mental conditions, "proof of severe emotional distress does not require medical expert testimony." *Coffman v. Roberson*, 153 N.C. App. 618, 627-28, 571 S.E.2d 255, 261 (2002). Testimony of friends, family, and pastors can be sufficient to support a claim for negligent infliction of emotional distress. *Id.* However, this Court has held dismissal of a claim for negligent infliction of emotional distress is proper when the "plaintiff fails to produce any real evidence of severe emotional distress." *Pacheco v. Rogers & Breece, Inc.*, 157 N.C. App. 445, 450, 579 S.E.2d 505, 508 (2003). The only evidence the plaintiffs have offered in support of their claim is their testimony stating they suffer from chronic depression. Previously, we held summary judgment was proper when the sole evidence of a plaintiff's alleged emotional distress was in her responses to defendant's interrogatories, when she answered she suffered from nightmares, was afraid of the dark and suffered stress-related illness. *Johnson v. Scott*, 137 N.C. App. 534, 539, 528 S.E.2d 402, 405 (2000). The plaintiff in *Johnson* and the plaintiffs in the case before us conceded they were never "diagnosed by any doctor as suffering from neurosis, psychosis, chronic depression, phobia or any other type of severe mental condition." *Id.* In *Johnson*, we held the plaintiff's uncorroborated evidence was insufficient to establish severe emo-

tional distress. *Id.* "When a plaintiff fails to produce any evidence of an essential element of her claim, the trial court's grant of summary judgment is proper." *Pacheco,* 157 N.C. App. at 452, 579 S.E.2d at 509. Because the plaintiffs have offered no real evidence of severe emotional distress, it was proper for the trial court to grant summary judgment for the defendant on this claim.

### III. *North Carolina Debt Collection Claims*

Mr. Williams next argues the trial court erred in granting summary judgment to defendant with respect to his unfair debt collection claims. N.C. Gen. Stat. § 75-50 *et seq.* prohibits certain acts by debt collectors. Mr. Williams contends that in the last seven years, HomEq has violated § 75-51(1),(3),(6),(8); § 75-52(3),(4); § 75-54(4),(6); and § 75-55(2). However, Mr. Williams only specifically argues in his brief that HomEq violated § 75-52 (3), (4) and § 75-55(2). Therefore, Mr. Williams' remaining assignments of error with respect to HomEq's alleged violations are deemed abandoned pursuant to N.C. R. App. P. 28(b)(6) (2005). Furthermore, Mrs. Williams, who was not a party to the loan at issue, can not challenge the entry of summary judgment on her claims regarding unfair debt collection.

[3] After a thorough review of the record, hearing transcripts, depositions, and exhibits, we agree with the trial court that no genuine issue of material fact existed with respect to § 75-52(4) and § 75-55(2). Under N.C. Gen. Stat. § 75-52(4) (2005), a debt collector is forbidden from:

> [p]lacing telephone calls or attempting to communicate with any person, contrary to his instructions, at his place of employment, unless the debt collector does not have a telephone number where the consumer can be reached during the consumer's nonworking hours.

*Id.* HomEq's telephone records show HomEq attempted to communicate with Mr. Williams at his place of employment on numerous occasions. Additionally, Mr. Williams' deposition testimony indicates that HomEq continued to call him at work even after he instructed them not to call him at work. However, Mr. Williams retired in September of 2000. He has not offered evidence of specific incidents under § 75-52(4) that occurred after 3 February 2001. North Carolina General Statute § 75-16.2 (2005), provides for a four-year statute of limitations for any civil action brought under Chapter 75. *Id.* Thus, Mr. Williams' claim under § 75-52(4) are barred by the statute of limitations.

## WILLIAMS v. HOMEQ SERVICING CORP.

[184 N.C. App. 413 (2007)]

**[4]** Pursuant to § 75-55(2), a debt collector is prohibited from:

[C]ollecting or attempting to collect from the consumer all or any part of the debt collector's fee or charge for services rendered, collecting or attempting to collect any interest or other charge, fee or expense incidental to the principal debt unless legally entitled to such fee or charge.

N.C. Gen. Stat. § 75-55(2) (2005). With respect to Mr. Williams' claimed wrongful imposition of charges and fees under § 75-55 (2), the brief includes the following citation: "*See, e.g.*, Dept. Tr. of M. Charles at 13, 23, 31)." On page 13 of the deposition of Molly Charles—a HomEq consumer advocacy analyst—Ms. Charles admitted that Mr. Williams was overcharged for late fees, but she further testified that she "had the late charges waived." On page 23, she agreed with Mr. Williams' counsel that some suspense funds were improperly applied to pay for fees and corporate advances, but she explained that those actions were reversed. Finally, on page 31, Ms. Charles is asked about a late charge assessed on 23 February 2004, which may or may not have been waived. Mr. Williams does not point to any evidence that the 23 February 2004 fee was not waived. Further, Mr. Williams provides no argument on appeal as to how he suffered actual injury since the wrongful imposition of fees was corrected. Therefore, we find that summary judgment was proper with respect to these claims.

**[5]** We do, however, agree with appellants there is a genuine issue of material fact with respect to the § 75-52(3) claim. N.C. Gen. Stat. § 75-52 governs harassment by debt collectors. A debt collector is prohibited from:

[c]ausing a telephone to ring or engaging any person in telephone conversation with such frequency as to be unreasonable or to constitute a harassment to the person under the circumstances or at times known to be times other than normal waking hours of the person.

N.C. Gen. Stat. § 75-52(3) (2005). What constitutes unreasonable conduct or harassment under § 75-52 is a case of first impression in North Carolina. In looking to other jurisdictions for guidance, we find courts construing similar statutes in other states have normally left the question of harassment for the jury, as "the effect of repeated telephone calls is colored by their tone and purpose." *Story v. J.M. Fields*, 343 So. 2d 675, 676 (Fla. Dist. Ct. App. 1st Dist. 1977). A claim

for telephone harassment by a debt collector should be considered on a "case by case basis, after considering not only the frequency of the calls but also the legitimacy of the creditor's claim, the plausibility of the debtor's excuse, the sensitivity or abrasiveness of the personalities, and all other circumstances that color the transaction." *Id.* at 677. Here, HomEq's records show the plaintiffs were called at least 2200 times since 1999, sometimes up to six times in one day. The plaintiffs allege the callers were rude and abrasive, and the telephone calls were demeaning. Mr. Williams also testified to specific calls in which he felt particularly harassed by HomEq employees. Viewing the evidence in the light most favorable to the plaintiffs, there was a genuine issue of material fact as to whether HomEq's phone calls were harassing.

[6] Alternatively, HomEq argues that even if the telephone calls violated § 75-52(3), a majority of the calls were made before 2001, and any action by the plaintiffs is barred by the statute of limitations. We disagree.

In general, the statute of limitations for any civil action brought under Chapter 75 is four years. N.C. Gen. Stat. § 75-16.2 (2005). However, Mr. Williams relies on *Bryant v. Thalhimer Brothers, Inc.*, 113 N.C. App. 1, 437 S.E.2d 519 (1993), to counter HomEq's statute of limitations argument. Mr. Williams cites *Bryant* for the proposition he "should be entitled to present evidence of violations that occurred more than four years before the initiation of this lawsuit." In *Bryant*, this Court considered a claim for intentional infliction of emotional distress based on ongoing sexual harassment that started substantially before the three-year period prior to the filing of the lawsuit.

The *Bryant* Court first noted the "decision by the North Carolina Supreme Court, *Waddle* [*v. Sparks*, 331 N.C. 73, 87, 414 S.E.2d 22, 29 (1992)], held that where the plaintiff could not show that 'any of the specific incidents' took place within the statutory period, she could not survive a motion for summary judgment." 113 N.C. App. at 7, 437 S.E.2d at 523. The *Bryant* Court concluded the requirements of *Waddle* had been met in that case because the plaintiff presented "evidence of specific incidents occurring within three years of the filing of the suit against Thalhimers." *Id.* at 11, 437 S.E.2d at 525. The Court then reasoned "evidence" of actions outside the statute of limitations was admissible to prove the claim of intentional infliction of emotional distress, a claim not barred by the statute of limitations. "The statutes of limitations serve to bar *claims*, not *evidence* of contribut-

WILLIAMS v. HOMEQ SERVICING CORP.

[184 N.C. App. 413 (2007)]

ing factors to an ultimate claim that has not yet come into existence." *Id.* at 13, 437 S.E.2d at 526 (emphasis added). *See also Dickens v. Puryear*, 302 N.C. 437, 455 & n. 11, 276 S.E.2d 325, 336 & n. 11 (1981) (holding the plaintiff could offer evidence of assault claims barred by statute of limitations in support of timely-filed intentional infliction of emotional distress claim, although damages could not be awarded for assault).

Here, Mr. Williams has presented evidence that he received harassing phone calls at home after 3 February 2001—the date four years prior to the filing of the lawsuit. Plaintiffs testified in their depositions, and Mr. Williams stated in his affidavit, the phone calls to their home continued at least until their current attorney became involved in 2005. Thus, consistent with *Bryant*, Mr. Williams has, with respect to the phone calls to his home, presented evidence of specific incidents occurring within the statute of limitations period. Furthermore, Mr. Williams may offer evidence of harassing phone calls occurring *outside* the statute of limitations period to prove his claim for phone calls occurring *within* the period, but he may not recover for calls that occurred prior to 3 February 2001.

[7] Finally, HomEq argues Mr. Williams' § 75-50 claims must be dismissed because they have failed to state actual damages. We disagree. HomEq cites to *Poor v. Hill*, 138 N.C. App. 19, 530 S.E.2d 838 (2000), in support of its contention Mr. Williams' debt collection claims are barred because Mr. Williams has failed to show any actual injury. HomEq is mistaken. In *Poor*, this Court specifically held that plaintiffs asserting Chapter 75 claims "must prove they suffered actual injury as a proximate result of defendants' misconduct." *Id.* at 34, 530 S.E.2d at 848 (internal quotations omitted). We disagree that Mr. Williams failed to offer evidence of injury proximately caused by the telephone calls. Mr. Williams has offered evidence through his deposition and affidavit, as well as the deposition of Mrs. Williams, tending to show the phone calls caused him emotional distress.

To the extent HomEq equates "actual injury" with out-of-pocket damages, that is not the law. Such a view would be inconsistent with N.C. Gen. Stat. § 75-16 (2005), which provides a person who was "injured" as a result of conduct in violation of Chapter 75 "shall have a right of action on account of such injury done, *and if damages are assessed* in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict." *Id.* (emphasis added). The statute thus distinguishes between "injury" and "damages." *See Shell Oil Co. v. Commercial*

*Petroleum, Inc.*, 928 F.2d 104, 109 n.7 (4th Cir. 1991) (affirming district court's injunction in favor of Shell under N.C. Gen. Stat. § 75-1.1 (2005), but also holding because the Fourth Circuit "affirm[ed] the [district] court's finding [of] no actual damages, Shell is not entitled to treble damages under state law."). Moreover, emotional distress damages are recoverable for fraud. Since fraud may be a basis for finding a Chapter 75 violation, it would be illogical to hold such damages were unavailable under Chapter 75 when that chapter was specifically enacted to provide a broader range of relief. *See Poor*, 138 N.C. App. at 34, 530 S.E.2d at 848.

With respect to the evidence of actual injury, HomEq contends its log of phone calls refutes plaintiffs' assertions regarding the frequency of calls during the statute of limitations period. Further, HomEq points to the fact Mr. Williams only recalled the specifics of two phone calls during that time frame. The log, however, creates a genuine issue of material fact as to the frequency of the calls. Whether to believe the log or the plaintiffs is a question for the jury, not for the trial court or this Court.

### IV. Collection Agency Claims

[8] Mr. Williams also appeals the dismissal of his claims under N.C. Gen. Stat. § 58-70 (2005). For the purposes of § 58-70, a collection agency "means a person directly or indirectly engaged in soliciting, from more than one person delinquent claims of any kind owed or due or asserted to be owed or due the solicited person and all persons directly or indirectly engaged in the asserting, enforcing or prosecuting of those claims." N.C. Gen. Stat. § 58-70-15(a) (2005). More importantly, the definition of collection agency does not include "banks, trust companies, or bank-owned, controlled, or related firms, corporations or associations engaged in accounting, bookkeeping, or data processing services where a primary component of such services is the rendering of statements of accounts and bookkeeping services for creditors." N.C. Gen. Stat. § 58-70-15(c)(2) (2005).

The evidence in the record shows HomEq is the type of bank subsidiary meant to be exempt under § 58-70-15(c)(2) (2005). Mr. Williams does not dispute HomEq is exempt under the statute; rather, he argues HomEq should be estopped from asserting exemption under the statute because HomEq failed to assert the exemption in the pleadings, and because HomEq held a collection agency license for a period of time.

We turn first to the question of whether a failure to raise the exemption in the pleading bars HomEq from raising the exemption at a hearing for summary judgment. We hold it does not.

The North Carolina Rules of Civil Procedure Rule 8(c) requires "any matter constituting an avoidance or affirmative defense" should be set forth in the pleadings. N.C. Gen. Stat. § 1A-1, Rule 8(c) (2005). Our Supreme Court has held "it is desirable to treat the pleading as though it were amended to conform to the evidence presented at the hearing." *Whitten v. Bob King's AMC/Jeep, Inc.*, 292 N.C. 84, 90, 231 S.E.2d 891, 894 (1977). Specifically, "unpleaded defenses, when raised by the evidence, should be considered in resolving a motion for summary judgment." *Bank v. Gillespie*, 291 N.C. 303, 306, 230 S.E.2d 375, 377 (1976). Thus, a "[defendant's] answer may be deemed amended to reflect the affirmative defense . . . as of the time the case was before the court on the motion for summary judgment." *Sample v. Morgan*, 311 N.C. 717, 726, 319 S.E.2d 607, 613 (1984).

HomEq was well within its bounds to raise the exemption during the summary judgment hearing, and it produced evidence which showed, as a matter of law, HomEq is exempt from § 58-70-15. Although it would have been preferable for HomEq to address this issue in its answer, the failure to do so did not preclude HomEq from raising the preemption at the hearing for summary judgment. Thus, it was not improper for the trial court to dismiss the action on these grounds.

Mr. Williams also argues HomEq should be estopped from asserting exemption under § 58-70-15 because HomEq held a collection agency permit for most of the years during which the conduct at issue occurred.

Under § 58-70-1, any business operating as a "collection agency" is required to obtain a permit before commencing business. N.C. Gen. Stat. § 58-71-1 (2005). Failure to procure a permit subjects the business itself to a Class I felony, and subjects agents of the business to a Class 1 misdemeanor. *Id.* HomEq contends it held a permit as insurance against subjecting its business and employees to criminal prosecution.

The application requirements for obtaining a collection agency permit are laid out in exhaustive detail in § 58-70-5. The application requirements do not require an applicant to fall under the definition of "collection agency" in order to qualify for a permit. There is noth-

ing in the article governing collection agencies which indicates any person or entity is subject to liability merely on the basis of holding a permit. Furthermore, we could find no legal authority which would allow us to impose liability on a party for simply holding a permit when the party is otherwise exempt from the statute. Thus, we hold the trial court was not in error for dismissing the § 58-70 claims.[1]

For the reasons stated herein, we reverse and remand for further proceedings Mr. Williams' claim under N.C. Gen. Stat. § 75-52(3). We affirm the trial court with respect to all other claims.

Affirmed in part, reversed and remanded in part.

Judges GEER concurs.

Judge JACKSON concurs in part and dissents in part in a separate opinion.

JACKSON, Judge concurring in part and dissenting in part.

I concur with sections I, II, and IV of the majority's opinion. However, I must dissent from the majority's analysis found in section III of the opinion, in which the majority disagrees with defendant's argument that plaintiff's section 75-50 claims must be dismissed because they have failed to prove they suffered actual damages. I would hold there was no genuine issue of material fact with respect to plaintiff's section 75-52(3) and section 75-52(4) claims.

The majority relies upon the holdings in *Bryant v. Thalhimer Bros., Inc.*, 113 N.C. App. 1, 437 S.E.2d 519 (1993) and *Waddle v. Sparks*, 331 N.C. 73, 414 S.E.2d 22 (1992), in support of its conclusion that plaintiff Mr. Williams may present evidence of incidents occurring outside of the statute of limitations period in support of his claims under section 75-52(3). Neither of these cases relate to Chapter 75 claims, and they have not been used previously in the Chapter 75 context to support an extension of the statute of limitations time period. I would decline to extend the reasoning in *Bryant* and *Waddle* to this case.

I believe *Poor v. Hill*, 138 N.C. App. 19, 530 S.E.2d 838 (2000), is controlling in the instant case, with respect to defendant's argument

---

1. Additionally, HomEq argues that any 58-70 claims are precluded by federal law. Because we hold that HomEq is exempt from any 58-70 claims, we do not reach the issue of federal preclusion.

that plaintiffs have failed to plead and prove actual damages. *Poor* discusses the trial court's award of attorney damages, but the portion of the opinion upon which defendant relies does not relate to an award of attorney's fees. Instead, the portion of *Poor* defendant relies upon discusses the types of damages a plaintiff may be entitled to for a Chapter 75 claim which arises out of a breach of contract claim. *See id.* at 34, 530 S.E.2d at 848. The Court in *Poor* specifically states that the plaintiffs in the case, on retrial, "must prove they 'suffered actual injury as a proximate result of defendants' misconduct." *Id.* at 34, 530 S.E.2d at 848. From my reading of *Poor*, a plaintiff must at least allege to have suffered actual injury as a result of the defendant's conduct, which I believe plaintiff in the instant case has failed to do.

In the instant case, the record demonstrates that defendant began calling plaintiffs several times per day in 1997. Defendant's earliest documentation of the calls is from December 1998, during which time, according to defendant's records, plaintiffs' phone was disconnected. Defendant was unable to contact plaintiff from 12 June 2000 until 1 August 2000. Plaintiff Harry Williams, who stated that he received calls from defendant at work until the day before he retired, retired from his employment in September 2000. Plaintiff also testified at deposition on 19 December 2005 that the last time he had received a telephone call at home was the day before he retired. Subsequently, on 29 December 2005, plaintiff filed an affidavit dated 28 December 2005 stating that, "[u]ntil my counsel intervened in about early 2005, defendant HomEq continued to make harassing telephone calls to me and my wife on an approximately daily basis." This conflict is problematic, however, because as we previously have ruled, "a party opposing a motion for summary judgment cannot create a genuine issue of material fact by filing an affidavit contradicting his prior sworn testimony." *Pinczkowski v. Norfolk S. Ry. Co.*, 153 N.C. App. 435, 440, 571 S.E.2d 4, 7 (2002). Thus we must credit plaintiff's deposition testimony, rather than his affidavit.

Defendant's "Communication History" records show over 2,000 entries related to communications with plaintiff between 8 December 1998 and 11 February 2005. However, this record shows only one outgoing call to plaintiff from 1 October 2002 through 11 February 2004.

Thus, although the statute of limitations for defendant's alleged violations of Chapter 75 may have renewed each time a call was placed, each week that the violation continued constituted a separate offense. *See* N.C. Gen. Stat. § 75-16.2. The statute of limitations for defendant's violations of sections 75-52(3) and 75-52(4) remains four

years. Based upon the record before us, defendant may have called plaintiff numerous times throughout the years, however I believe evidence of, at most, a single call during the applicable statute of limitations period cannot be sufficient to constitute an actual injury. While defendant's conduct may have constituted a continuing wrong, plaintiff may not use calls placed more than four years ago as evidence to support harassment and actual injury. As noted by the majority, there is no existing caselaw interpreting section 75-52, and I believe we should not extend the application of *Bryant* and *Waddle* to incidents such as this where the evidence is lacking, and the plaintiff has failed to allege facts and forecast evidence sufficient to survive summary judgment.

As such, I would hold that plaintiff failed to allege that they suffered actual injury as a result of the defendant's conduct, and thus the trial court acted properly in granting defendant's motion for summary judgment on these claims.