KLEIN, J.
 

 Appellant plaintiff brought this action for fraud and statutory violations against Morse, a Chevrolet dealer, and GMAC, which financed the sale of a car. We reverse the summary judgment against plaintiff on his claim for fraud against Morse, reverse a judgment for damages on one of plaintiffs statutory claims based on harassment by the creditor, GMAC, and address additional claims.
 

 Plaintiff alleged that, when his stepdaughter was unable to obtain credit to
 
 *4
 
 purchase a car, Morse induced him to sign a document to help her, but fraudulently-represented to him that the document would not obligate him on the loan. In addition, the plaintiff alleged that Morse charged him premiums for insurance it never obtained. We previously addressed some of these issues in
 
 Schauer v. General Motors Acceptance Corp.,
 
 819 So.2d 809 (Fla. 4th DCA 2002), in which we reversed an order dismissing plaintiffs complaint for failure to state a cause of action.
 

 In the pi'ior appeal we held that the complaint stated causes of action against Morse for fraud, as well as under the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), section 501.203(8), Florida Statutes, and against both defendants under the Florida Consumer Collection Practices Act (FCCPA), section 559.72, Florida Statutes. On remand, the trial court entered summary judgments on most of plaintiffs claims; however, the claim that GMAC made harassing telephone calls which violated the FCCPA was tried, and a jury awarded plaintiff $5,500 in damages. GMAC has cross-appealed the judgment entered on that verdict, which we address first.
 

 The claim against GMAC under the FCCPA was based on section 559.72(7), Florida Statutes 1999, which provides:
 

 In collecting consumer debts, no person shall:
 

 (7) Willfully communicate with the debt- or or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family[.]
 

 According to the parties, there were at most seven telephone calls over a six-month period from GMAC, attempting to collect the loan which was in default. Some of the calls, which were made during the day when plaintiff was at work, were answered by his wife, who advised GMAC to call back in the evening. The worst that can be said about any of the calls was one in which GMAC told plaintiff he would be in “big trouble,” if he did not repay the loan. Once plaintiff informed GMAC he had a lawyer, GMAC made no further calls.
 

 GMAC did not move for a directed verdict at trial, but argues that the trial court erred in not granting its motion for summary judgment. Both sides rely on
 
 Story v. J.M. Fields, Inc.,
 
 343 So.2d 675 (Fla. 1st DCA 1977), a case brought under the FCCPA in which there were more than 100 telephone calls during a five-month period. The court succinctly stated the facts as follows:
 

 Story considered himself aggrieved by Fields’ failure to repair a Fields brand air conditioner bought 15 months earlier. Story therefore advised Fields’ credit manager, Allen, that he intended not to make payments on other merchandise Story had purchased on credit until the air conditioner was repaired. Story’s evidence, which Allen substantially contradicted, tended to prove that Allen then telephoned Story at his home, at the residences of other members of his family, and at his business places to demand payment of Story’s debt. According to Story’s evidence, which we must accept in determining the propriety of a directed verdict, the telephone calls came almost daily, sometimes two or three times daily, and amounted to at least 100 calls over a period of five months. Story testified that he returned some but by no means all of Allen’s calls, spoke with him at least once a week, and finally told Allen to
 
 *5
 
 stop bothering him and to take the matter to court, for he did not intend to pay.
 

 In addressing the statute, the court stated:
 

 Proof of numerous calls does not make a jury issue on liability if all must agree the creditor called only to inform or remind the debtor of the debt, to determine his reasons for nonpayment, to negotiate differences or to persuade the debtor to pay without litigation. The trier of fact may consider such communications harassing in their frequency, however, when they continue after all such information has been communicated and reasonable efforts at persuasion and negotiation have failed. Beyond that point communication “can reasonably be expected to harass the debtor or his family,” because it tends only to exhaust the resisting debtor’s will. If the creditor intends that likely effect, further communication is willful and actionable.
 

 Id.
 
 at 677.
 

 The
 
 Stony
 
 panel reversed the directed verdict entered by the trial court in favor of the defendant and remanded for a new trial in which plaintiff could recover compensatory, but not punitive damages. The present case does not come close to
 
 Story
 
 in terms of egregious conduct, in that there were, at most, only seven telephone calls, and only one in which there was anything which could be termed a threat. Although plaintiffs wife testified that these calls were upsetting to her, her worries were not attributable to anything wrong that GMAC said to her, but rather her own concern about their ability to pay the loan. And, as we noted earlier, as soon as plaintiff informed GMAC he had a lawyer, there were no further calls. Although the
 
 Story
 
 court allowed the claim to go forward, it did caution:
 

 “Unless some latitude is given the creditor to invade, to a reasonable extent, the debtor’s right of privacy, without incurring liability, we may well end up with the result that the creditor will find it preferable to proceed immediately with legal action when a debt becomes in default, without any warning to the debtor, rather than run the risk of being answerable to a supersensitive debt- or.... ”
 
 Household Finance Cory. v. Bridge,
 
 252 Md. 531, 543, 250 A.2d 878, 885-86, 56 A.L.R.3d 446, 455 (1969).
 

 Id.
 
 at 677.
 

 We conclude that GMAC demonstrated on its motion for summary judgment that there were no genuine issues of material fact,
 
 Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000), and that GMAC is accordingly entitled to a summary judgment. The telephone calls, about which there was no dispute, were as a matter of law neither frequent nor so harassing so to violate section 559.72(7), Florida Statutes.
 

 Plaintiff also alleged a violation of FCCPA, section 559.72(9), which provides that it is unlawful for a person to:
 

 (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist[.]
 

 The trial court granted a summary judgment in favor of GMAC on that claim, which we affirm. As we noted earlier, GMAC received the financing papers from Morse with no reason to believe that this was not a legitimate debt. Plaintiff claimed that his signature had been forged, notwithstanding his own handwriting expert’s opinion that it was his signature. The fact that plaintiff asserted, when he received telephone calls from GMAC attempting to collect the debt, that he did not owe the debt, is insufficient, in
 
 *6
 
 our opinion, to create an issue of fact as to his claim that GMAC knew that the debt was not legitimate. The statute does not provide for recovery if the creditor merely should have known the debt was not legitimate. Where, as here, GMAC had merely received the papers from Morse, and had no direct contact with plaintiff, the trial court was correct in granting GMAC’s motion for summary judgment.
 

 We next address the summary judgment in favor of Morse on the claim for fraud, which involved representations by Morse that the papers plaintiff signed would not make him liable. The trial court granted the summary judgment because it concluded that plaintiff had suffered no “out-of-pocket” or “benefit-of-the-bargain” damages which are the damages recoverable for fraud.
 
 Morgan Stanley & Co. v. Coleman (Parent) Holdings Inc.,
 
 955 So.2d 1124, 1128 (Fla. 4th DCA);
 
 review denied,
 
 973 So.2d 1120 (Fla.2007).
 

 On this record there are issues of fact as to whether plaintiff suffered damages as a result of the deficiency for the loan being reported by GMAC on his credit history, and these damages would be recoverable. As explained in
 
 Vinson v. Ford Motor Credit Co.,
 
 259 So.2d 768, 771 (Fla. 1st DCA 1972), which involved the slander of credit reputation,
 

 “A man’s credit in this day and age is one of his most valuable assets and without it, a substantial portion of the American people would be without their homes, washing machines, refrigerators, automobiles, television sets, and other mechanical paraphernalia that are now regarded as necessities of life.”
 
 [Am. Fire & Cas. Co. v. Davis, 146
 
 So.2d 615, 619 (Fla. 1st DCA 1962) ].
 

 Pan Am. Bank of Miami v. Osgood,
 
 383 So.2d 1095, 1097 (Fla. 3d DCA 1980);
 
 City of Stuart v. Lynn,
 
 705 So.2d 1073 (Fla. 4th DCA 1998) (affirming damages for negligent impairment of appellee’s credit rating);
 
 Matthews v. Deland State Bank,
 
 334 So.2d 164, 165 (Fla. 1st DCA 1976) (affirming damages for improper entry in credit history where loan was denied).
 

 Plaintiff, through an expert, presented proof sufficient to raise issues of fact regarding damage to his credit rating, resulting in his being required to pay higher interest on subsequent loans. As for plaintiffs contention that he can also recover mental anguish under his fraud theory, plaintiff has not supported that with any authority which persuades us. The damages he can recover will accordingly be limited to those he sustained to his credit rating, or for liability on the loan which were caused by the fraud. On remand plaintiff will be entitled to have the original retail installment sales contract produced and made available for his examination.
 

 The trial court also granted Morse’s motion for summary judgment on plaintiffs FDUTPA claim because plaintiff did not suffer any recoverable. damages. Under FDUTPA section 501.211(2), Florida Statutes (1999), a consumer may recover “actual damages” but section 501.212(3) explains that FDUTPA does not apply to a “claim for personal injury or death or a claim for damage to property other than the property that is the subject of the consumer transaction.”
 

 Although the term “property” is not defined in the statute, the second district has held that “the type of property which is the subject of such a transaction for which actual damages were recoverable” is found in the definition of a “Consumer transaction” in section 501.203.
 
 Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.,
 
 693 So.2d 602, 605 (Fla. 2d DCA 1997). In 1999, section 501.203 provided in pertinent part as follows:
 

 
 *7
 
 (8) “Trade or commerce” means the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated....
 

 (9) “Thing of value” may include, without limitation, any moneys, donation, membership, credential, certificate, prize, award, benefit, license, interest, professional opportunity, or chance of winning.
 

 Based on sections 501.212(8) and 501.203(8) and (9), this court and other courts have held that section 501.211 “ ‘entitles a consumer to recover damages attributable to the diminished value of the goods or services received, but does not authorize recovery of consequential damages to other property attributable to the consumer’s use of such goods or services.’ ”
 
 Fort Lauderdale Lincoln Mercury, Inc. v. Corgnati,
 
 715 So.2d 311, 314 (Fla. 4th DCA 1998) (quoting
 
 Urling v. Helms Exterminators, Inc.,
 
 468 So.2d 451, 453 (Fla. 1st DCA 1985)).
 

 Plaintiff recognizes that damages to his credit rating are consequential,
 
 T.D.S. Inc. v. Shelby Mut. Ins. Co.,
 
 760 F.2d 1520, 1542 (11th Cir.1985) (identifying injury suffered to credit reputation as “special” or “consequential damages”);
 
 Walker v. Ford Motor Co.,
 
 684 F.2d 1355 (11th Cir.1982). We affirm the summary judgment insofar as it precludes recovery of those damages. In addition, however, plaintiff argues that he suffered damages as a result of being obligated for the loan, and we cannot, on the basis of this record, agree with Morse’s argument that we should affirm because GMAC ultimately did not pursue any claim on the loan against him. There are material issues of fact as to whether plaintiff remains obligated on the loan, or was improperly charged for insurance, and the summary judgment is reversed as to any damages for these claims under FDUTPA against Morse.
 

 Plaintiff also sought declaratory and in-junctive relief under FDUTPA, which in section 501.211(1) provides that a person aggrieved by a violation of FDUTPA may obtain a declaratory judgment that an act or practice violates FDUTPA. It also authorizes the courts to enjoin a party “who has violated, is violating, or is otherwise likely to violate” FDUTPA. The trial court granted a summary judgment in favor of Morse; however, we reverse. We conclude that there are material issues of fact as to whether Morse was engaging in practices which should be enjoined.
 

 We have considered the other issues raised to be without merit. Accordingly, we reverse the summary judgment on the fraud claim against Morse, reverse the summary judgment against plaintiff under FDUTPA for recovery of any damages plaintiff can establish as a result of being obligated on the debt, and reverse the declaratory and injunctive relief summary judgment on FDUTPA claims. We also reverse the award of damages against GMAC under the FCCPA and remand for entry of a judgment for GMAC on that claim.
 

 STEVENSON, J., and KELLEY, GLENN D., Associate Judge, concur.